No. 23-70009

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

TERRY PITCHFORD,
*Petitioner-Appellee,*

*v.*

BURL CAIN, COMMISSIONER, MISSISSIPPI DEPARTMENT OF CORRECTIONS;
LYNN FITCH, ATTORNEY GENERAL FOR THE STATE OF MISSISSIPPI,
*Respondents-Appellants.*

Appeal from the United States District Court
for the Northern District of Mississippi
No. 4:18-cv-00002-MPM

## RESPONDENTS-APPELLANTS' OPENING BRIEF

LYNN FITCH
  *Attorney General*
SCOTT G. STEWART
  *Solicitor General*
JUSTIN L. MATHENY
ANTHONY M. SHULTS
  *Deputy Solicitors General*
LADONNA C. HOLLAND
ALLISON K. HARTMAN
  *Special Assistant Attorneys General*
MISSISSIPPI ATTORNEY
  GENERAL'S OFFICE
P.O. Box 220
Jackson, MS 39205-0220
Telephone: (601) 359-3680
E-mail: Allison.Hartman@ago.ms.gov

*Counsel for Respondents-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

Under this Court's Rule 28.2.1, governmental parties need not furnish a certificate of interested persons.

*s/ Allison K. Hartman*
Allison K. Hartman
*Counsel for Respondents-Appellants*

## STATEMENT REGARDING ORAL ARGUMENT

The district court in this case vacated petitioner Terry Pitchford's nearly 20-year-old capital-murder conviction and death sentence. That decision rests on manifest errors and fails to afford the state courts the deference required by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d). A full presentation that includes oral argument will aid this Court's resolution of this appeal, which involves significant stakes for all parties.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................... i

STATEMENT REGARDING ORAL ARGUMENT ................................... ii

TABLE OF AUTHORITIES ........................................................................ v

INTRODUCTION ....................................................................................... 1

STATEMENT OF JURISDICTION........................................................... 6

STATEMENT OF THE ISSUES................................................................ 6

STATEMENT OF THE CASE ................................................................... 7

SUMMARY OF ARGUMENT ................................................................. 15

STANDARD OF REVIEW....................................................................... 15

ARGUMENT ............................................................................................ 16

I.    This Court Should Reverse The Judgment Below Because The District Court Manifestly Erred In Ruling That Petitioner Is Entitled To Habeas Relief Under 28 U.S.C. § 2254(d).................. 16

    A.    Petitioner Is Not Entitled To Relief Under Section 2254(d)(1)................................................................ 18

    B.    Petitioner Is Not Entitled To Relief Under Section 2254(d)(2)................................................................ 25

II.   At Minimum This Court Should Vacate The Judgment Below Because The Remedy The District Court Ordered—Release Conditioned On Retrial—Is Insupportable.................................... 27

CONCLUSION........................................................................................ 32

CERTIFICATE OF SERVICE ............................................................... 33

iii

CERTIFICATE OF COMPLIANCE ........................................................ 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Batson v. Kentucky,*
476 U.S. 79 (1986) ........................................................ *passim*

*Bobby v. Van Hook,*
558 U.S. 4 (2009) (per curiam) ............................................ 31

*Brown v. Davenport,*
142 S. Ct. 1510 (2022) ................................................. 17, 18

*Burt v. Titlow,*
571 U.S. 12 (2013) ........................................................ 26

*Carey v. Musladin,*
549 U.S. 70 (2006) .................................................... 19, 21

*Chamberlin v. Fisher,*
885 F.3d 832 (5th Cir. 2018) (en banc) ...............3, 4, 17, 18, 19, 21, 25

*Coulter v. Gilmore,*
155 F.3d 912 (7th Cir. 1998) .............................................. 29

*Cullen v. Pinholster,*
563 U.S. 170 (2011) ...................................................... 24

*Danforth v. Minnesota,*
552 U.S. 264 (2008) ...................................................... 29

*Davis v. Ayala,*
576 U.S. 257 (2015) .................................................. 20, 22

*Edwards v. Vannoy,*
141 S. Ct. 1547 (2021) ................................................. 30-31

v

*Engle v. Isaac,*
    456 U.S. 107 (1982) ................................................................ 30

*Flowers v. Mississippi,*
    139 S. Ct. 2228 (2019) ......................................................... 24

*Flowers v. State,*
    947 So. 2d 910 (Miss. 2007) ............................... 13, 14, 23, 24

*Harrington v. Richter,*
    562 U.S. 86 (2011) ........................................ 3, 16, 17, 18, 30

*Hilton v. Braunskill,*
    481 U.S. 770 (1987) ............................................................. 28

*Jackson v. Denno,*
    378 U.S. 368 (1964) ............................................................. 29

*Jimenez v. Quarterman,*
    555 U.S. 113 (2009) ............................................................. 29

*Jones v. West,*
    555 F.3d 90 (2d Cir. 2009) .................................................. 29

*Kernan v. Cuero,*
    583 U.S. 1 (2017) (per curiam) ........................................... 23

*Lewis v. Casey,*
    518 U.S. 343 (1996) ............................................................. 28

*Lynch v. State,*
    877 So. 2d 1254 (Miss. 2004) .............................................. 11

*Manning v. State,*
    735 So. 2d 323 (Miss. 1999) ................................................ 22

*Marshall v. Rodgers,*
    569 U.S. 58 (2013) ............................................................... 23

*Mississippi State Chapter, Operation Push, Inc. v. Mabus*,
   932 F.2d 400 (5th Cir. 1991) ................................................................ 28

*Moody v. Quarterman*,
   476 F.3d 260 (5th Cir. 2007) ............................................................... 27

*Pitchford v. Mississippi*,
   563 U.S. 939 (2011) ............................................................................. 12

*Pitchford v. State*,
   45 So. 3d 216 (Miss. 2010) ................................ 1, 2, 7-12, 19, 20, 22, 26

*Pitchford v. State*,
   240 So. 3d 1061 (Miss. 2017) ............................................................. 12

*Pitchford v. State*,
   No. 2010-DR-01032-SCT (Miss. Feb. 14, 2013) ................................. 12

*Purkett v. Elem*,
   514 U.S. 765 (1995) (per curiam) ................................................. 20, 22

*Rice v. Collins*,
   546 U.S. 333 (2006) ....................................................................... 8, 27

*Rose v. Lundy*,
   455 U.S. 509 (1982) ............................................................................ 30

*Russell v. Denmark*,
   68 F.4th 252 (5th Cir. 2023) .............................................................. 16

*Schlup v. Delo*,
   513 U.S. 298 (1995) ............................................................................ 28

*Shinn v. Ramirez*,
   142 S. Ct. 1718 (2022) ............................................................ 17, 30, 31

*Smith v. Lucas*,
   9 F.3d 359 (5th Cir. 1993) .................................................................. 28

*Stone v. Powell*,
    428 U.S. 465 (1976) .................................................................. 31

*United States v. Cuff*,
    79 F.4th 470 (5th Cir. 2023) ................................................. 22

*United States v. Foreman*,
    84 F.4th 615 (5th Cir. 2023) ................................................. 22

*United States v. Montgomery*,
    210 F.3d 446 (5th Cir. 2000)................................................ 7-8

*Waller v. Georgia*,
    467 U.S. 39 (1984) ................................................................ 29

*White v. Woodall*,
    572 U.S. 415 (2014) .............................................................. 19

*Woodfox v. Cain*,
    805 F.3d 639 (5th Cir. 2015).............................................29-30

## Constitutional Provision

U.S. Const. amend. XIV..........................................................3-4

## Statutes

28 U.S.C. § 1291.......................................................................... 6

28 U.S.C. § 2243........................................................................ 29

28 U.S.C. § 2253.......................................................................... 6

28 U.S.C. § 2254...................................................... 3-6, 14-19, 23, 25, 26

## INTRODUCTION

This Court should reverse the district court's judgment granting habeas relief to petitioner Terry Pitchford. That judgment vacates petitioner's nearly 20-year-old conviction for capital murder, throws out his death sentence, and orders the State of Mississippi to retry or release him. The judgment rests on manifest errors of law.

A jury convicted petitioner of capital murder. Affirming petitioner's conviction and death sentence, the Mississippi Supreme Court rejected petitioner's claim that the State violated *Batson v. Kentucky*, 476 U.S. 79 (1986), by striking black potential jurors for racially discriminatory reasons. At step 1 of the 3-step *Batson* framework, the supreme court upheld the trial judge's ruling that petitioner made a prima facie case of racial discrimination because the State struck 4 of 5 black potential jurors. At step 2, the supreme court upheld the trial judge's ruling that the State offered valid race-neutral reasons for the 4 challenged strikes. At step 3—where the trial judge must "determine if the defendant has established purposeful discrimination," *id.* at 98—the supreme court ruled that the trial judge properly rejected petitioner's *Batson* claim. The supreme court explained that petitioner "provided the trial court no rebuttal to the State's race-neutral reasons" and that, when "the defendant fails to rebut, the trial judge must base his ... decision on the reasons given by the State." *Pitchford v. State*, 45 So. 3d 216, 227 (Miss. 2010). Because the State gave race-neutral reasons for its strikes and

1

petitioner "failed to provide any argument concerning pretext during the *Batson* hearing," the supreme court ruled that petitioner's *Batson* claim failed. *Id.* at 228. On appeal, petitioner made—for the first time— "rebuttal" arguments claiming that the State's reasons for its strikes were pretextual. *Id.* at 227; *see id.* at 227-28. The supreme court declined to "entertain those arguments": it refused to "fault the trial judge" for "failing to discern whether the State's race-neutral reasons were overcome by rebuttal evidence and argument never presented." *Id.* at 227, 228.

On federal habeas review, the district court credited the Mississippi Supreme Court's rulings at steps 1 and 2 of *Batson*. But the district court granted habeas relief to petitioner—under the Antiterrorism and Effective Death Penalty Act (AEDPA)—because, the court reasoned, "no state court" performed the analysis required at step 3 of *Batson*. ROA.18056; *see* ROA.18050-18056. The district court did not conclude that the state courts should have found a *Batson* violation at step 3. ROA.18056. It ruled instead that the state supreme court committed "erro[r]" when it "fail[ed]" "to address" petitioner's "arguments regarding pretext" at step 3—the arguments that petitioner never made to the trial judge and first raised on appeal. ROA.18057. On that basis, the district court held that "the state courts' rejection of" petitioner's *Batson* claim "was contrary to or an unreasonable application of clearly established

federal law." ROA.18059. The district court ordered the State to release or retry petitioner. ROA.18059-18060; ROA.18061.

This Court should reject the district court's judgment.

*First*, the district court manifestly erred in granting habeas relief. Under AEDPA, 28 U.S.C. § 2254(d), a federal court may grant habeas relief only when "the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The district court did not seriously attempt to square its decision with that standard. That court invoked AEDPA just three times—one boilerplate, one generic, one conclusory. ROA.18044, 18053, 18059. Nowhere did the district court try to show— as AEDPA requires—that the Mississippi Supreme Court's decision was objectively unreasonable. *See Chamberlin v. Fisher*, 885 F.3d 832, 837-38 (5th Cir. 2018) (en banc). And the Mississippi Supreme Court's decision was not just reasonable but clearly correct.

The district court was wrong to grant relief under 28 U.S.C. § 2254(d)(1). That provision permits habeas relief only if the Mississippi Supreme Court's decision "was contrary to, or involved an unreasonable application of, clearly established" U.S. Supreme Court caselaw. The district court cited only *Batson* and its progeny as supplying clearly established law. *E.g.*, ROA.18053. *Batson* holds that a State may not discriminate on the basis of race when exercising peremptory challenges

against prospective jurors in a criminal trial and sets forth a 3-step framework for determining whether a State has violated that rule. 476 U.S. at 97-98. But the Mississippi Supreme Court correctly applied the *Batson* line of cases: it conducted the 3-step *Batson* inquiry; it considered all arguments and points presented to the trial judge; and, because in the trial court petitioner offered only bare numbers to support his *Batson* claim, the supreme court correctly upheld the trial judge's rejection of that claim. The district court credited most of the state courts' *Batson* analysis but ruled that the state supreme court defied *Batson* by not considering pretext—in particular, a comparative juror analysis that petitioner first raised on appeal. ROA.18056-18057. But step 3 of *Batson* simply requires "[t]he trial court ... to determine if *the defendant* has established purposeful discrimination." 476 U.S. at 98 (emphasis added). No holding of the U.S. Supreme Court—in *Batson* or otherwise—required the Mississippi Supreme Court to consider arguments and evidence that a defendant failed to present to the trial judge. Indeed, this Court has held that U.S. Supreme Court precedent does not clearly establish that state reviewing courts must "conduct a comparative juror analysis at all." *Chamberlin*, 885 F.3d at 838. Precedent dooms the judgment below.

The district court was also wrong to the extent that it granted relief under 28 U.S.C. § 2254(d)(2). That provision permits habeas relief only if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

It is unclear whether the district court even granted relief under section 2254(d)(2). The court never identified what state-court factual determination was purportedly unreasonable and disclaimed any "finding" on a comparative juror analysis. ROA.18056. The district court cited both sections 2254(d)(1) and (d)(2) in concluding that petitioner was entitled to relief, but the court invoked only section 2254(d)(1)'s standard for *legal* errors. ROA.18059. In any event, the state courts reasonably assessed the facts in rejecting petitioner's *Batson* claim. Nothing permitted the district court to rule that any state court's factual determination was unreasonable. That precludes relief under section 2254(d)(2).

*Second*, and at minimum, this Court should reject the remedy the district court ordered—conditional release based on retrial. ROA.18060. That remedy is not tailored to the constitutional violation the district court found. The district court did not rule that the State exercised peremptory strikes in a discriminatory way. *See* ROA.18054-18057. Rather, it ruled that the state courts improperly failed to conduct step 3 of the *Batson* inquiry. ROA.18057. But any such error is correctable: The Mississippi Supreme Court could evaluate and address petitioner's step-3 arguments. So retrial is not required—and ordering it was error.

The decision below is profoundly wrong and inflicts an injustice on the State and people of Mississippi. This Court should reject it.

## STATEMENT OF JURISDICTION

The district court exercised jurisdiction over this federal habeas case under 28 U.S.C. § 2254. On December 12, 2023, the district court entered final judgment granting habeas relief. ROA.18061. Respondents timely appealed. ROA.18062. This Court has jurisdiction under 28 U.S.C. §§ 1291 and 2253.

## STATEMENT OF THE ISSUES

1. Did the district court err in granting habeas relief to petitioner on his *Batson* claim when the Mississippi Supreme Court rejected that claim after carefully assessing all 3 steps of the *Batson* inquiry, considering the arguments and points presented to the trial judge, declining to consider arguments that petitioner first raised on direct appeal, and ruling that petitioner failed to carry his burden of showing a *Batson* violation where the State offered race-neutral reasons for its strikes and petitioner offered only feeble numbers to support his claim?

2. Did the district court err in granting petitioner release conditioned on retrial as a remedy for a *Batson* violation when the district court did not rule that the State exercised peremptory strikes in a racially discriminatory way but instead ruled that the state courts improperly failed to conduct step 3 of the *Batson* analysis—an error that the Mississippi Supreme Court could resolve without retrial by simply evaluating and addressing petitioner's step-3 arguments?

6

## STATEMENT OF THE CASE

**Facts and Trial.** On November 7, 2004, petitioner and his friend Eric Bullins went to the Crossroads Grocery store in Grenada County, Mississippi, with the intent of robbing it. *Pitchford v. State*, 45 So. 3d 216, 222-23 (Miss. 2010). The robbery resulted in the murder of store owner Reuben Britt. *Id.* at 223. Bullins shot Britt three times. *Ibid.* Petitioner and Bullins stole a cash register and cash from the store. *Id.* at 222. Petitioner confessed to his role in the murder. *Id.* at 223.

Petitioner was indicted for capital murder. 45 So. 3d at 223. At the start of voir dire, there were 126 venire members—40 black, 84 white, 1 Hispanic, and 1 who did not provide race information. *Ibid.* The trial judge excused (without objection) 30 potential jurors for statutory reasons or reasons unrelated to the case, leaving 96—35 black members and 61 white members. *Ibid.* After voir dire, the trial judge excused 52 potential jurors for cause and 3 for other reasons (again without objection). *Ibid.* That left 36 white potential jurors and 5 black potential jurors. *Ibid.* Of the final pool, petitioner used all 12 of his peremptory strikes, all on white potential jurors. *Ibid.* The State used 7 of its 12 peremptory strikes, striking 3 white and 4 black potential jurors. *Ibid.*

Petitioner raised a *Batson* challenge, claiming that the State had struck black potential jurors for racially discriminatory reasons. 45 So. 3d at 224-25. So the trial judge proceeded with *Batson*'s 3-step inquiry. *Id.* at 226. Under *Batson's* 3-step framework, the "party making

the claim of purposeful discrimination bears the ultimate burden of persuasion" in establishing a racially motivated strike. *United States v. Montgomery*, 210 F.3d 446, 453 (5th Cir. 2000). At step 1, the claimant must make a prima facie showing that "the prosecutor exercised a peremptory challenge on the basis of race." *Rice v. Collins*, 546 U.S. 333, 338 (2006). If the claimant makes this showing, at step 2 "the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question." *Ibid.* At step 3, the court must determine whether the claimant "has carried his burden of proving purposeful discrimination." *Ibid.*

The trial judge was persuaded that petitioner had shown a prima facie case of discrimination (step 1) "given the number of black [potential] jurors that were struck." ROA.17955; *see* 45 So. 3d at 226. So the judge proceeded to step 2 and required the State to provide race-neutral reasons for 4 peremptory strikes. 45 So. 3d at 226. The State gave its race-neutral reasons for striking each of the black potential jurors: Carlos Fitzgerald Ward, Linda Ruth Lee, Christopher Lamont Tillmon, and Patricia Anne Tidwell. *Id.* at 226-27. The State struck Ward because he had no opinion on the death penalty, had a two-year-old child, had never been married, and had many speeding violations. *Id.* at 226. The State added that Ward and petitioner had many similarities (including age, marital status, and children), which made Ward an unfavorable juror. *Ibid.*; *see* ROA. 17957-17958. The State struck Lee because, according to

the police captain, Lee "ha[d] mental problems" and police had been dispatched to her home multiple times and because she had been fifteen minutes late returning to court. 45 So. 3d at 226. The State struck Tillmon because he had a brother who was convicted of manslaughter. *Id.* at 227. Because this was a murder case, the State did not "want anyone on the jury that has relatives convicted of similar offenses." *Ibid.* And the State struck Tidwell because her brother was convicted of battery in the same court and, at the time of petitioner's trial, he was charged in a shooting case pending in the same county. *Ibid.* The State added that Tidwell was "a known drug user." *Ibid.* The trial judge accepted the State's reasons for its strikes as race neutral. *Id.* at 227-28.

That left step 3 of the *Batson* analysis. Beyond claiming a pattern of the State's striking black jurors, the only other information that petitioner offered to support his *Batson* challenge was to claim (without evidence) that black persons made up 40% of the county's population and to note that only 1 black juror was seated. 45 So. 3d at 225; *see* ROA.17954-17964. As petitioner's counsel put it, petitioner sought: to "reserve [his] *Batson* objection"; to make sure not "to let the paneling of the jury go by without having th[at] objection[ ]"; and to put in the record that 1 of the 14 jurors was black "whereas this county is approximately, what, 40 percent?" ROA.17963. The trial judge confirmed that petitioner had "made th[at]" *Batson* objection, affirmed that the objection was "clear in the record," and heard petitioner's presentation on numbers.

9

ROA.17963. After the trial judge confirmed that the jury had only one black member, petitioner's counsel said "Thank you" and offered no other argument or evidence that the State's race-neutral reasons were pretextual. ROA.17964; *see* ROA.18052-18053 (district-court opinion block-quoting this exchange).

Faced with the State's race-neutral reasons and petitioner's presentation, the trial judge rejected petitioner's *Batson* claim. 45 So. 3d at 227-28.

**Direct Appeal**. The Mississippi Supreme Court upheld, by a 7-to-2 vote, the trial judge's rejection of petitioner's *Batson* claim. 45 So. 3d at 224-28.

On step 1, the supreme court was "persuaded that the record supports the trial court's finding of a prima facie showing of discrimination." 45 So. 3d at 225.

On step 2, the supreme court upheld the trial judge's ruling that the State proffered race-neutral reasons for the 4 challenged strikes. 45 So. 3d at 226-27. The supreme court agreed that the State's reasons for striking Ward—his similarities to petitioner—were race neutral. *Id.* at 226. The supreme court also ruled that the State's reasons for striking Lee—her tardiness and history of mental issues—were race neutral. *See ibid.* (striking a juror for having mental problems is "clearly a race neutral reason"). And the supreme court held that, because a family member's criminal history supplies a race-neutral reason, the State's

10

reasons for striking Tillmon and Tidwell—each of whom had a brother who was convicted of a violent felony—were race neutral. *Id.* at 227 (citing *Lynch v. State,* 877 So. 2d 1254, 1271-72 (Miss. 2004)).

On step 3, the supreme court ruled that the trial judge properly rejected petitioner's *Batson* claim. 45 So. 3d at 227-28. The supreme court explained that petitioner "provided the trial court no rebuttal to the State's race-neutral reasons" and that, when "the defendant fails to rebut, the trial judge must base his ... decision on the reasons given by the State." *Id.* at 227. Although petitioner advanced rebuttal arguments *on appeal* with a comparative juror analysis, the supreme court declined to "entertain those arguments" because petitioner "failed to provide" them "during the *Batson* hearing." *Id.* at 227-28. The supreme court said: "We will not now fault the trial judge with failing to discern whether the State's race-neutral reasons were overcome by rebuttal evidence and argument never presented." *Id.* at 227. Because the State gave race-neutral reasons for its strikes and petitioner "failed to provide any argument concerning pretext during the *Batson* hearing," petitioner's *Batson* claim failed. *Id.* at 228.

In dissent, then-Justice Graves faulted the majority's resolution of *Batson*'s step 3. 45 So. 3d at 266; *see id.* at 262-68. He maintained that the trial judge's decision to "accept[ ] the State's race-neutral reasons" was "clearly erroneous." *Id.* at 266. He also maintained that petitioner did not "waive[ ]" his arguments on pretext. *Ibid.* Instead, in Justice

Graves' view, petitioner should have been permitted to "rely[ ] on evidence contained in the record and presented to the trial court during voir dire" to rebut the State's proffered reasons for its strikes. *Id.* at 268.

The U.S. Supreme Court denied certiorari. *Pitchford v. Mississippi*, 563 U.S. 939 (2011).

**State Post-Conviction-Relief Proceedings.** Petitioner sought post-conviction relief. The Mississippi Supreme Court rejected his claims. *Pitchford v. State,* 240 So. 3d 1061 (Miss. 2017); Order, *Pitchford v. State*, No. 2010-DR-01032-SCT (Miss. Feb. 14, 2013).

**Federal Habeas Proceedings**. In 2018, petitioner sought federal habeas relief. ROA.100-381. He made many claims challenging his conviction and sentence, including a *Batson* claim. After years of discovery litigation and some delay due to COVID, the parties filed cross-motions for partial summary judgment. ROA.17795, 17994. (The size of the record on appeal—over 18000 pages—is largely due to that discovery. The vast bulk of that record has no bearing on this appeal.)

On December 12, 2023, the district court issued an order granting habeas relief on petitioner's *Batson* claim. ROA.18041-18060. That court credited the Mississippi Supreme Court's rulings at steps 1 and 2. At step 1, the district court ruled, "the State's pattern of striking all but one black juror sufficiently demonstrated a prima facie showing under *Batson*." ROA.18047; *see* ROA.18045-18047. At step 2, the district court concluded that "there was no error in the state courts' acceptance of the

12

State's race-neutral reasons" for exercising the challenged strikes. ROA.18050; *see* ROA.18047-18050.

But the district court granted habeas relief because, it concluded, "no state court" performed the analysis required at step 3 of *Batson*. ROA.18056; *see* ROA.18050-18059. *Batson*, the district court said, was binding, "well-settled law" when petitioner was tried. ROA.18053. Yet, the district court ruled, the state trial judge "quickly deemed the [State's] reasons as race-neutral and moved on" without undertaking the analysis required at step 3. ROA.18057. And, according to the district court, the state supreme court failed "to address" petitioner's "arguments regarding pretext" at step 3. ROA.18057. The state supreme court "should have performed" a "comparative [juror] analysis" (even if petitioner "had waived the issue" of pretext—which, according to the district court, "he did not"). ROA.18057. The state supreme court's "failure to do so," the district court ruled, "was erro[r]." ROA.18057. The district court did not decide how step 3 should have been resolved. Although the district court found "persuasive" Justice Graves' dissent on direct appeal, ROA.18054; *see* ROA.18054-18056, the court "ma[de] no finding as to whether it ultimately agree[d] with Justice Graves' analysis as to each juror stricken," ROA.18056. The district court added that the Mississippi Supreme Court "should have" "examined" the history surrounding Curtis Flowers' case when it considered petitioner's *Batson* claim. ROA.18059 (referring to the Mississippi Supreme Court's reversal because of a

13

*Batson* violation in *Flowers v. State*, 947 So. 2d 910 (Miss. 2007)); *see* ROA.18057-18059. The district court summed up: "the Court believes that the state courts' rejection of" petitioner's "*Batson* claim was contrary to or an unreasonable application of clearly established federal law." ROA.18059 (citing 28 U.S.C. § 2254(d)(1) & (2)).

The district court vacated petitioner's conviction and death sentence, then ordered the State to retry him "within 180 days" of its December 12 judgment or "otherwise ... release" him. ROA.18059-18060.

**Stay Proceedings.** On December 19, 2023, respondents noticed this appeal and moved the district court to stay its judgment pending resolution of the appeal. ROA.18062, 18064. Respondents asked the district court to issue a stay immediately, to expedite consideration of the stay motion, and at all events to rule on the stay request by January 11, 2024. ROA.18064-18066. Although the time from indictment to jury selection routinely exceeds a year in capital cases, the district court responded to respondents' motion by questioning why respondents needed a ruling by January 11—a date that would have left only 5 months for retrial. *E.g.*, ROA.18084-18085. And although the stay motion was fully briefed on January 8—and although respondents told the district court that they planned to seek stay relief from this Court on January 12 if the district court did not rule by January 11—the district court failed to rule by January 11. Respondents therefore filed a stay motion with this Court early on January 12. CA5 Dkt. 17. Within hours

of that filing, the district court issued a two-page order staying its judgment pending resolution of this appeal. ROA.18114-18115.

## SUMMARY OF ARGUMENT

I.    This Court should reverse the judgment below. The district court manifestly erred in ruling that petitioner is entitled to habeas relief. The district court barely attempted to grapple with AEDPA's demands and never tried to show—as AEDPA requires—that the Mississippi Supreme Court's decision was objectively unreasonable. Far from committing any objective error, the state courts soundly applied Supreme Court caselaw in rejecting petitioner's *Batson* claim. The state courts' legal and factual determinations were not just reasonable but were clearly correct. There is no basis for granting relief under 28 U.S.C. § 2254(d).

II.    At minimum, this Court should vacate the judgment below because the relief the district court ordered—release conditioned on retrial—is improper. That relief is not tailored to the constitutional violation that the court found. The relief therefore violates rules of equity and the limitations that Congress placed on habeas remedies in AEDPA.

## STANDARD OF REVIEW

On appeal from a grant of habeas relief, this Court reviews the district court's legal conclusions *de novo* and its factual findings for clear

error. *Russell v. Denmark*, 68 F.4th 252, 261 (5th Cir. 2023), *cert. denied*, No. 23-5410, 2024 WL 72074 (U.S. Jan. 8, 2024).

Under AEPDA, federal courts review state-court decisions deferentially. AEPDA permits a federal court to grant habeas relief only where a state court "decision ... was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (d)(2). This standard is "difficult to meet"—and is "meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). AEDPA permits a district court to grant habeas relief only when the state court's decision is "so lacking in justification" that the error is "beyond any possibility for fairminded disagreement." *Id.* at 103.

## ARGUMENT

This Court should reject the district court's judgment granting habeas relief to petitioner.

## I.   This Court Should Reverse The Judgment Below Because The District Court Manifestly Erred In Ruling That Petitioner Is Entitled To Habeas Relief Under 28 U.S.C. § 2254(d).

The district court granted habeas relief to petitioner under 28 U.S.C. § 2254(d). ROA.18059-18060; *see* ROA.18050-18059. The court manifestly erred in doing so.

Habeas relief "is an extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system." *Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022) (internal quotation marks omitted). "Because federal habeas review overrides the States' core power to enforce criminal law, it intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1731 (2022) (internal quotation marks omitted). Thus, to "respect our system of dual sovereignty," "the availability of habeas relief is narrowly circumscribed." *Id.* at 1730. Section 2254(d) of AEDPA "restricts a federal court's ability to grant habeas relief after an adjudication on the merits in state court to only two grounds"— objectively "unreasonable" legal or factual determinations. *Chamberlin v. Fisher*, 885 F.3d 832, 837 (5th Cir. 2018) (en banc). Section 2254(d) authorizes a federal court to grant habeas relief only when "the state court's ruling" denying such relief "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Petitioner is not entitled to relief under any sound application of these principles.

Even a surface review of the district court's decision shows that it does not square with section 2254(d)'s demands. The district court's opinion invokes AEDPA's standard only three times. First, it recites that standard in the boilerplate legal-standard section near the start of the

opinion. ROA.18044. Second, it includes this one-sentence statement in the midst of its analysis: "At the time of [petitioner's] trial, *Batson* was well-settled law that the trial court was bound to uphold and apply." ROA.18053. Third, it sums up its analysis with this statement (followed by a citation to sections 2254(d)(1) and (2)): "In sum, the Court believes that the state courts' rejection of [petitioner's] *Batson* claim was contrary to or an unreasonable application of clearly established federal law." ROA.18059. Those three conclusory intonations of AEDPA are woefully inadequate on their face. Nowhere does the opinion attempt to show that the Mississippi Supreme Court's legal or factual determinations were "unreasonable" (*Chamberlin*, 885 F.3d at 837), that "fairminded jurists" could not agree with that court's decision (*Richter*, 562 U.S. at 102), or that that decision amounts to an "extreme malfunction[ ] in the state criminal justice system" (*Davenport*, 142 S. Ct. at 1524).

And a deeper review of the district court's decision drives home how flawed it is. Petitioner is not entitled to relief under AEDPA. The district court's judgment should be reversed.

## A. Petitioner Is Not Entitled To Relief Under Section 2254(d)(1).

Petitioner is not entitled to relief under 28 U.S.C. § 2254(d)(1). The district court erred in ruling otherwise. ROA.18059; *see* ROA.18050-18059.

Under section 2254(d)(1), a federal court may grant habeas relief only if the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." "[C]learly established Federal law" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006). Section 2254(d)(1) imposes a very demanding standard. The question under that section "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Chamberlin*, 885 F.3d at 837. "[A]n unreasonable application of" Supreme Court holdings means that the state court's decision was "objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (cleaned up).

The district court cited only *Batson* and its progeny as supplying clearly established law. *E.g.*, ROA.18053. But the Mississippi Supreme Court reasonably applied the *Batson* line of cases. That court soundly conducted the 3-step *Batson* inquiry—examining petitioner's prima facie case of discrimination (step 1), assessing the State's proffered reasons for its challenged strikes (step 2), and then reviewing the trial judge's "determin[ation]" that petitioner did not "establish[ ] purposeful discrimination" (step 3). *Batson*, 476 U.S. at 97-98; *see Pitchford v. State*,

45 So. 3d 216, 224-28 (Miss. 2010). The supreme court considered the arguments and points presented to the trial judge. 45 So. 3d at 224-28. And because in the trial court the State offered race-neutral reasons for its strikes and petitioner offered only weak, bare numbers to support his *Batson* claim, the supreme court correctly upheld the trial judge's rejection of that claim. *Id.* at 227-28.

The district court concluded that the state supreme court's ruling departed from *Batson* because it did not consider "pretext"—in particular, the comparative juror analysis, not offered to the trial judge, that petitioner first raised on appeal. ROA.18056-18057. But the Mississippi Supreme Court reasonably—and correctly—evaluated and ruled based on the arguments and evidence presented to the trial judge. "[T]he ultimate burden of persuasion regarding racial motivation" under *Batson* "rests with, and never shifts from, the opponent of the strike." *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam). Step 3 of *Batson* thus requires "[t]he trial court ... to determine if *the defendant* has established purposeful discrimination." *Batson*, 476 U.S. at 98 (emphasis added); *see id.* at 97-98. Once the State has proffered race-neutral reasons for the challenged strikes, the *Batson* line of cases does not permit a defendant to sit on his hands. In assessing a *Batson* claim, the trial judge must assess whether the defendant "has proved purposeful racial discrimination" (*Elem,* 514 U.S. at 767) "*in light of the parties' submissions.*" *Davis v. Ayala*, 576 U.S. 257, 270 (2015) (emphasis added).

If the defendant offers no response to the State's race-neutral reasons (or a feeble response), his *Batson* claim fails—pure and simple.

The state courts properly applied the *Batson* framework in determining that petitioner did not carry his burden to show discrimination. No U.S. Supreme Court "holding[ ]"—in *Batson* or otherwise—required the Mississippi Supreme Court to consider arguments and evidence that a defendant failed to present to the trial judge. *Musladin*, 549 U.S. at 74. Indeed, this Court has recognized en banc that U.S. Supreme Court precedent does *not* clearly establish that state reviewing courts must "conduct a comparative juror analysis at all." *Chamberlin*, 885 F.3d at 838.

The district court also suggested that the trial judge thwarted petitioner's presentation of pretext arguments or that the judge did not give petitioner a chance to rebut the State's proffered race-neutral reasons. ROA.18057; *see* ROA.18052-18053. That conclusion is insupportable and derives from an unreasonable view of the transcript: the passage on which the district court relied shows that the trial judge *allowed* petitioner's counsel to present any remaining arguments that she had not already presented. ROA.18052-18053; *see* ROA.17963-17964. Rather than make any argument to show pretext, petitioner sought only to "reserve [his] *Batson* objection" and to claim that 1 of the 14 jurors was black "whereas this county is approximately, what, 40 percent?" ROA.17963; *see* ROA.17954-17964. Petitioner's "pretext" argument was

not "thwarted," ROA.18053—the only argument he sought to place in the record was on the racial makeup of the jury and of Grenada County, ROA.17963-17964. The trial judge allowed petitioner to present that point. ROA.17964. The trial judge (and the state supreme court) simply ruled that point insufficient to carry petitioner's "burden" to "prov[e]" that the State struck any juror because of race. *Elem*, 514 U.S. at 768.

The state courts did not unreasonably apply *Batson* (or any other case) in faulting petitioner—rather than the trial court—for the lack of pretext arguments or evidence in the record. *Pitchford*, 45 So. 3d at 227-28. It is well settled that a litigant forfeits arguments that he fails to present to the trial court. *Manning v. State*, 735 So. 2d 323, 340 (Miss. 1999) (defendant waived discussion of other allegedly discriminatory strikes by failing to argue pretext at trial); *see United States v. Foreman*, 84 F.4th 615, 619 (5th Cir. 2023) (a party forfeits an argument by raising it for the first time on appeal); *United States v. Cuff*, 79 F.4th 470, 479 (5th Cir. 2023) (same). Petitioner had the opportunity to present his pretext arguments to the trial judge. And if the trial judge had really refused to allow him to make those arguments, petitioner was obliged to object to any such refusal and attempt to make a proffer. Petitioner instead presented to the trial judge only weak, bare numbers about the county's population and the jury's racial composition. 45 So. 3d at 227-28. The trial judge properly rejected petitioner's *Batson* arguments "in light of the parties' submissions" before the court. *Ayala*, 576 U.S. at 270.

Petitioner cannot fault the state supreme court for not considering arguments or evidence that he failed to present to the trial judge—particularly given the deference that state courts enjoy under AEDPA. The district court erred in ruling otherwise.

The district court also discussed "the Curtis Flowers case history" and said that "the *Flowers* case" decided by the Mississippi Supreme Court in 2007 "was, at the very least, informative," and the supreme court "should have ... examined" it. ROA.18057, 18059; *see* ROA.18057-18059. But AEDPA does not authorize a federal habeas court to reject a state-court decision for failing to consult *state-court* caselaw; it allows relief only from decisions that are "contrary to, or involve[ ] an unreasonable application of, clearly established" *U.S. Supreme Court* caselaw. 28 U.S.C. § 2254(d)(1); *see Kernan v. Cuero*, 583 U.S. 1, 8 (2017) (per curiam) ("[S]tate-court decisions" "do[ ] not constitute 'clearly established Federal law, as determined by the Supreme Court.'") (quoting 28 U.S.C. § 2254(d)(1)); *cf. Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (lower-court decisions cannot, for AEDPA purposes, "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that" the Supreme Court "has not announced").

In its stay order, the district court tried to rehabilitate this point. The court maintained that it "did not rely on state law" in granting relief. ROA.18115. Instead, the court said that it believed that "state court cases"— *Flowers* "in particular"—"should have been included in the state

23

appellate court's consideration of the totality of the circumstances" under *Batson*. ROA.18115. But petitioner did not introduce any evidence or make any argument before the trial court to suggest that the circumstances in *Flowers* (or any other case) undermined the State's race-neutral reasons for the challenged strikes in *this* case. Indeed, the Supreme Court's later decision in *Flowers v. Mississippi*, 139 S. Ct. 2228 (2019), itself reiterated that the burden is on the defendant "to present ... evidence" "to support [his] claim" that the prosecutor was "motivated in substantial part by discriminatory intent," and the trial court must assess such evidence "in light of the arguments of the parties." *Id.* at 2243, 2244. While the "history of the State's peremptory strikes in past cases" may be part of a *Batson* analysis in a particular case, it is up to the defendant to "rely" on that history and show why it is "relevant." *Id.* at 2243, 2245. Petitioner did not do so here, and so he cannot fault the state courts for not considering such evidence. (Perhaps realizing his failure to make the needed showing, petitioner has at times cited materials produced in federal habeas discovery. *E.g.*, ROA.17965-17966 & n.1; ROA.18097-18099. But—as petitioner has himself admitted, ROA.18029—that material is not part of the state-court record and petitioner cannot rely on it in seeking relief under AEDPA. *See Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011).)

The state courts' rejection of petitioner's *Batson* claim was not just reasonable: it was objectively correct. There was no basis for the district court to disturb the state courts' rulings.

### B.    Petitioner Is Not Entitled To Relief Under Section 2254(d)(2).

Petitioner is not entitled to relief under 28 U.S.C. § 2254(d)(2) either. The district court erred to the extent that it ruled otherwise. *See* ROA.18059.

A federal court may grant habeas relief under section 2254(d)(2) only if the state court's adjudication on the merits "resulted in a decision that was based on an unreasonable determination of the facts *in light of the evidence presented in the State court proceeding.*" (emphasis added). "[S]tate-court factual findings ... are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence." *Chamberlin*, 885 F.3d at 837. And petitioner's burden here was especially high. He had to "overcome both the burden placed on [him] by the *Batson* framework and the substantial deference AEDPA requires [the federal court] to give the state court's factual findings." *Id.* at 838.

To start, it is questionable whether the district court even purported to grant relief under section 2254(d)(2). Although the court cited section 2254(d)(2) in concluding that petitioner was entitled to habeas relief, *see* ROA.18059, the court never explained what state-court factual determination was purportedly unreasonable. In the sentence

preceding that citation, the district court invoked only the criteria for relief set forth in section 2254(d)(1)—regarding *legal* errors. ROA.18059.

In any event, the state courts reasonably assessed the facts in determining that petitioner failed to establish a *Batson* violation and that petitioner did not preserve his new pretext arguments. At step 3 of the trial court's *Batson* analysis, the trial judge considered the State's race-neutral reasons and petitioner's presentation (which consisted only of bare numbers) in rejecting petitioner's *Batson* challenge. *Pitchford,* 45 So. 3d at 227-28; ROA.17954-17964. After the State presented its race-neutral reasons for striking the 4 challenged black potential jurors, petitioner did not counter by trying to show pretext. 45 So. 3d at 227-28; ROA.17954-17964. He sought only to reserve his *Batson* objection, to put the statistical makeup of Grenada County in the record, and to note that the jury had one black member. ROA.17964. Based on these facts, the Mississippi Supreme Court held that petitioner failed to present to the trial court evidence that the State's race-neutral reasons were pretextual. 45 So. 3d at 227.

That ruling was reasonable, which precludes relief under section 2254(d)(2). On section 2254(d)(2) review, a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt v. Titlow*, 571 U.S. 12, 18 (2013). Federal habeas courts must honor a state court's factual determination whenever "[r]easonable minds

reviewing the record might disagree" on the finding in question. *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The district court's role was "not to assess whether it agreed with the state court's ruling, but to determine whether [that ruling] was entitled to the presumption of correctness and to decide whether that determination was unreasonable in light of the evidence presented." *Moody v. Quarterman*, 476 F.3d 260, 269 (5th Cir. 2007). Nothing permitted the district court to rule that any state court's factual determination was unreasonable. When faced with petitioner's feeble presentation of bare numbers against the State's disciplined presentation of sound, race-neutral reasons for its strikes, the state courts soundly found that petitioner failed to show a *Batson* violation. Again, the state courts' factual determinations were not just reasonable but clearly correct.

This Court should reverse the judgment below.

## II.  At Minimum This Court Should Vacate The Judgment Below Because The Remedy The District Court Ordered— Release Conditioned On Retrial—Is Insupportable.

At minimum, this Court should reject the remedy the district court ordered—release conditioned on retrial. ROA.18060, 18061. The district court's grant of conditional release based on retrial is not tailored to the constitutional violation that the court found. That relief therefore violates rules of equity and the limitations that Congress placed on habeas remedies in AEDPA.

Start with equity. Although governed by statute, the writ of habeas remains "at its core, an equitable remedy." *Schlup v. Delo*, 513 U.S. 298, 319 (1995). And equitable remedies must "be limited to the inadequacy that produced" the underlying constitutional injury. *Lewis v. Casey*, 518 U.S. 343, 357 (1996); *e.g.*, *Mississippi State Chapter, Operation Push, Inc. v. Mabus*, 932 F.2d 400, 406 (5th Cir. 1991) ("an equitable remedy must be fashioned to address the constitutional violation established"). Thus, in granting a conditional writ, a federal habeas court "provide[s] the State an opportunity to correct the constitutional violation found by the [federal] court." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987); *see Smith v. Lucas*, 9 F.3d 359, 367 (5th Cir. 1993) (conditional grants "delay the writ to allow the state to correct" the underlying "federal law violation"). A federal habeas court may go that far—but no farther.

Here, the district court granted a remedy that exceeded the violation that it found. The district court did not rule that the State exercised peremptory strikes in a racially discriminatory way. *See* ROA.18054-18057. Rather, it ruled only that the state courts improperly failed to conduct step 3 of the *Batson* analysis. ROA.18056-18057; *see* ROA.18056 ("no state court" "conducted a full three-step *Batson* inquiry"). Any such error is correctable without a retrial: The Mississippi Supreme Court could just evaluate and address petitioner's step-3 arguments. *Cf.* ROA.18057 (district court's ruling that "the Mississippi Supreme Court should have performed" a step-3 "analysis").

Given that, retrial is not required—and ordering it is not "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984); *see ibid.* (granting "a new trial"—instead of "a new suppression hearing" that could "remedy th[e] constitutional violation"—"would be a windfall for the defendant, and not in the public interest"). Any relief in this case should be conditioned not on retrial but on the state supreme court addressing step 3 of *Batson*. *Cf. Jackson v. Denno*, 378 U.S. 368, 394 (1964) (conditioning writ on state court conducting evidentiary hearing to determine admissibility of defendant's confession); *Jones v. West*, 555 F.3d 90, 102 (2d Cir. 2009) (granting conditional writ based on state court conducting a new *Batson* hearing); *Coulter v. Gilmore*, 155 F.3d 912, 922 (7th Cir. 1998) (granting same "[i]n the interest of comity and the possible efficiency of avoiding a new trial").

Now take Congress's limitations on habeas relief. In AEDPA Congress directed that federal courts should "dispose of" habeas petitions "as law and justice require." 28 U.S.C. § 2243. That directive serves "as an authorization" for courts "to adjust the scope of the writ in accordance with equitable and prudential considerations." *Danforth v. Minnesota*, 552 U.S. 264, 278 (2008). Such considerations include important state interests in "comity, finality, and federalism" that AEDPA honors. *Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009). "[B]y giving state courts the first opportunity to review [the] claim and to correct any constitutional violation in the first instance," proper conditional writs

further "AEDPA's goal of promoting comity, finality and federalism." *Woodfox v. Cain*, 805 F.3d 639, 645 (5th Cir. 2015); *see id.* at 647-48 ("Federal habeas courts ... should let state courts address constitutional and evidentiary issues in the first instance."). "[I]t would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." *Rose v. Lundy*, 455 U.S. 509, 518 (1982).

The decision below departs from those sound principles that Congress embraced. For one thing, the order "frustrate[s]" the State's "sovereign power to punish offenders," *Engle v. Isaac*, 456 U.S. 107, 128 (1982), and "disturbs the State's significant interest in repose for concluded litigation," *Richter*, 562 U.S. at 103. Petitioner was convicted of capital murder—one of the worst crimes there is. "[A] federal order to retry or release a state prisoner" like petitioner risks depriving the State and the public of "the right to punish" serious criminals. *Shinn v. Ramirez*, 142 S. Ct. 1718, 1731 (2022). That risk is heightened here. Petitioner was first tried nearly 20 years ago. Witnesses from that trial may be unavailable and memories may have faded. "Passage of time, erosion of memory, and dispersion of witnesses may render retrial difficult, even impossible," and "may reward the accused with complete freedom from prosecution." *Isaac*, 456 U.S. at 127-28. "When previously convicted perpetrators of violent crimes go free merely because the evidence needed to conduct a retrial has become stale or is no longer

available, the public suffers, as do the victims." *Edwards v. Vannoy*, 141 S. Ct. 1547, 1554 (2021). And "[e]ven when the evidence can be reassembled, conducting retrials years later inflicts substantial pain on crime victims who must testify again and endure new trials." *Id.* at 1554-55.

For another thing, ordering petitioner's retrial—without first giving the state supreme court an opportunity to address step 3 of *Batson*—would impose massive and unnecessary costs on the State. Trying a capital case is always a significant undertaking requiring potentially thousands of hours of work—by attorneys, investigators, mitigation specialists, medical experts, and others. And capital cases are becoming more labor- and time-intensive. They generally involve complex, months-long pretrial mental evaluations and mitigation investigations, often "cover[ing] every period of the defendant's life from the moment of conception." *Bobby v. Van Hook*, 558 U.S. 4, 8 (2009) (per curiam) (internal quotation marks omitted). And retrial here will be particularly challenging. The prosecutors who conducted petitioner's first trial have left the District Attorney's Office. The efforts needed to prepare and retry the case will divert attorneys from other important cases. Far from being "the most effective utilization of limited judicial resources," *Stone v. Powell*, 428 U.S. 465, 491 n.31 (1976), an unnecessary retrial would reflect a profound lack of "respect" for "our system of dual sovereignty," *Ramirez*, 142 S. Ct. at 1730.

For these reasons, this Court should at minimum vacate the remedy that the district court ordered.

## CONCLUSION

This Court should reverse, or at least vacate, the district court's judgment granting habeas relief.

Respectfully submitted,

LYNN FITCH
  *Attorney General*

*s/ Allison K. Hartman*

SCOTT G. STEWART
  *Solicitor General*
JUSTIN L. MATHENY
ANTHONY M. SHULTS
  *Deputy Solicitors General*
LADONNA C. HOLLAND
ALLISON K. HARTMAN
  *Special Assistant Attorneys General*
MISSISSIPPI ATTORNEY
  GENERAL'S OFFICE
P.O. Box 220
Jackson, MS 39205-0220
Telephone: (601) 359-3680
E-mail: Allison.Hartman@ago.ms.gov

*Counsel for Respondents-Appellants*

February 26, 2024

## CERTIFICATE OF SERVICE

I, Allison K. Hartman, hereby certify that this brief has been filed with the Clerk of Court using the Court's electronic filing system, which sent notification of such filing to all counsel of record.

Dated: February 26, 2024

<u>*s/Allison K. Hartman*</u>
Allison K. Hartman
*Counsel for Respondents-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 7423 words, excluding parts exempted by Fed. R. App. P. 32. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because its text has been prepared in proportionally spaced typeface, including serifs, using Microsoft Word 2016, in Century Schoolbook 14-point font.

Dated: February 26, 2024

<u>*s/ Allison K. Hartman*</u>
Allison K. Hartman
*Counsel for Respondents-Appellants*