# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Terry Pitchford,
*Petitioner-Appellee,*

v.

Burl Cain, Commissioner, Mississippi Department of Corrections;
Lynn Fitch, Attorney General for the State of Mississippi,
*Respondents-Appellants.*

Appeal from the United States District Court
For the Northern District of Mississippi
No. 4:18-cv-00002-MPM

## PETITIONER-APPELLEE'S BRIEF

Joseph J. Perkovich
Phillips Black, Inc.
PO Box 3547
New York, NY 10008
(212) 400-1660
j.perkovich@phillipsblack.org

Joseph C. Welling
Phillips Black, Inc.
100 N. Tucker Blvd., Ste. 750
St. Louis, MO 63101
(314) 629-2492
j.welling@phillipsblack.org

J. Scott Gilbert
Watkins & Eager PLLC
The Emporium Building
400 East Capitol Street
Jackson, MS 39201
(601) 965-1922
sgilbert@watkinseager.com

*Attorneys for Petitioner-Appellee*

# CERTIFICATE OF INTERESTED PERSONS

*Pitchford v. Cain*, 23-70009

Undersigned counsel of record certify, pursuant to Circuit Rule 28.2.1, that there are no persons with a financial interest in the outcome of this case. The Appellee's name and the names of counsel involved in this case are listed below. This information is provided for the judges of this Court to evaluate possible recusal or disqualification:

> Terry Pitchford, Petitioner-Appellee
> J. Scott Gilbert, Joseph J. Perkovich, Joseph C. Welling, Counsel for Petitioner-Appellee
> Burl Cain, Respondent-Appellant
> Lynn Fitch, Respondent-Appellant
> Scott G. Stewart, Attorney for Respondents-Appellants
> Justin L. Matheny, Attorney for Respondents-Appellants
> LaDonna Holland, Attorney for Respondents-Appellants
> Allison K. Hartman, Attorney for Respondents-Appellants
>
> Joseph Loper, state court judge who presided at trial and post-conviction
> Doug Evans, prosecutor, first chair
> Clyde Hill, prosecutor, second chair
> Ray Charles Carter, Pitchford's trial and direct appeal attorney, first chair;
> Ray Baum, Pitchford's trial attorney, second chair
> Alison Steiner, trial attorney, co-counsel; direct appeal attorney, second chair
> Patrick Joseph McNamara, Jr., attorney for the State on direct appeal
> Jamila K. Alexander Virgil, Pitchford's state post-conviction attorney

Louwylynn Vanzetta Williams, Pitchford's state post-conviction attorney

Cameron Leigh Benton, attorney for the State in post-conviction

Jason L. Davis, attorney for the State in post-conviction

April 26, 2024

/s Joseph J. Perkovich
Attorney of Record for Petitioner-Appellee

## STATEMENT REQUESTING ORAL ARGUMENT

This is a capital case in which the District Court has granted the writ of habeas corpus. Terry Pitchford, by and through undersigned counsel respectfully requests oral argument in the belief that it will assist this Court in assessing the important issues in this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .................................. ii

STATEMENT REQUESTING ORAL ARGUMENT ......................... iv

TABLE OF CONTENTS .................................................................. v

TABLE OF AUTHORITIES ......................................................... vii

STATEMENT OF THE CASE ......................................................... 1

I. Introduction ............................................................................... 1

II. Batson Challenges .................................................................. 4

   A. Trial Record ....................................................................... 4

   B. Appellate Decision............................................................10

III. Collateral Review ................................................................12

SUMMARY OF THE ARGUMENT.................................................16

ARGUMENT ...............................................................................17

I. Background: The Mississippi Supreme Court's Misapplication
of Batson Rises to "Extreme Malfunction".................................17

   A. Introduction.......................................................................17

   B. The State Courts' Failures to Consider the Credibility of
   the Prosecutor's Strikes Fatally Flawed the Outcome. ......19

   C. This Failure of the Mississippi Supreme Court to Apply
   *Batson* Jurisprudence Constitutes "Extreme Malfunction."
   ...............................................................................................25

II. Issue 1:  Satisfaction of Both of § 2254(d)'s Disjunctive
Standards Predicate the Writ's Grant..........................................25

   A. Standard of Review ..........................................................26

   B. The State Court's Unreasonable Fact Determinations
   Require Relief.........................................................................27

      1. The trial court record lacks any factual determination of
      the State's intent in striking the four black venirepersons.........28

      2. The state supreme court's findings are completely
      unsupportable and necessitate the writ. ......................................31

**C. The State Court's Unreasonable Application of Law Requires Relief.** ..................................................................32

    1.The state supreme court's rejection of "totality of the relevant facts" review contravened Batson. ..................32

    2. Examination of the trial record with respect to the State's strikes reflect pretext and purposeful discrimination. ................39

        <u>Patricia Anne Tidwell, Venire Member 18</u>........................40

        <u>Linda Ruth Lee, Venire Member 30</u> ....................................42

        <u>Christopher L. Tillmon, Venire Member 31</u> ........................44

        <u>Mr. Ward, Venire Member 48</u> ............................................46

**III. Issue 2: Because Erroneous Denial of a *Batson* Challenge is Structural Error, Reversal is Required, and the District Court's Remedy is Not an Abuse of Discretion.** ............................................49

**A. Standard of Review** ..................................................................49

**B. *Batson* Addresses a Fundamental Equal Protection Right Affecting the Integrity of the Entire Criminal Prosecution.** ..................................................................................................50

    1. Batson Provides a Remedy Addressing an Unremitting History of Discrimination. .............................................50

    2. District Attorney Evans ...................................................51

**C. Erroneous Denial of a *Batson* Challenge Is Structural Error, Demanding Reversal of the Trial Court Judgment.** 52

**CONCLUSION** ..........................................................................56

**CERTIFICATE OF COMPLIANCE** ......................................57

# TABLE OF AUTHORITIES

Page(s)

Cases

*Arizona v. Fulminante,*
499 U.S. 279 (1991) ..........................................................................54, 57

*Batson v. Kentucky*
476 U.S. 79 (1986) ..........................................................................Passim

*Bell v. Cone,*
535 U.S. 685 (2002) ..........................................................................27

*Berry v. State,*
802 So.2d 1033(Miss. 2001) ..........................................................37

*Brady v. Maryland,*
373 U.S. 83 (1963) ..........................................................................14

*Brumfield v. Cain,*
576 U.S. 305 (2015) ..........................................................................27

*California v. Trombetta,*
467 U.S. 479 (1985) ..........................................................................14

*Chamberlin v. Fisher,*
885 F.3d 832 (5th Cir. 2018)..........................................11, 28, 55

*Coulter v. Gilmore,*
155 F.3d 912 (7th Cir. 1998)..........................................................57

*Drain v. Woods,*
595 F. App'x 558 (6th Cir. 2014) ..........................................56

*Edmonds v. State,*
955 So. 2d 787 (Miss. 2007) ..........................................................3

*Ex parte Travis,*
776 So.2d 874 (Ala.2000) ..........................................................38

*Flowers v. Mississippi,*
588 U.S. 284 (2019)..........................................24, 52, 53, 54

*Flowers v. State,*
947 So.2d 910 (Miss. 2007) ..........................................................39

*Forrest v. Beloit Corp.*,
424 F.3d 344 (3d Cir. 2005) ................................................................56

*Foster v. Chatman*,
578 U.S. 488 (2016) ................................................................19

*Giglio v. United States*,
405 U.S. 150 (1972) ................................................................14

*Guidry v. Dretke*,
397 F.3d 306 (5th Cir. 2005) ................................................................27

*Hayes v. Thaler*,
361 F. App'x 563 (5th Cir. 2010) ................................................................Passim

*Hernandez v. New York*,
500 U.S. 352 (1991) ................................................................18, 21, 22

*Hilton v. Braunskill*,
481 U.S. 770 (1987) ................................................................50

*Jackson v. Denno*,
378 U.S. 368 (1964) ................................................................56

*Jackson v. Virginia*,
443 U.S. 307 (1979) ................................................................25

*Johnson v. California*,
545 U.S. 162 (2005) ................................................................33, 40

*Jones v. Cain*,
600 F.3d 527 (5th Cir. 2010) ................................................................50, 56

*Jones v. West*,
555 F.3d 90 (2d Cir. 2009) ................................................................57

*Kyles v. Whitley*,
514 U.S. 419 (1995) ................................................................14

*Ladd v. Cockrell*,
311 F.3d 349 (5th Cir. 2002) ................................................................30

*Lynch v. State*,
877 So. 2d 1254 (Miss. 2004) ................................................................19, 20

*Mack v. State*,
650 So.2d 1289 (Miss.1994) ................................................................37

*Manning v. State,*
   735 So.2d 323 (Miss. 1999) ................................................37

*Manning,*
   765 So. 2d ...........................................................................37

*McManus v. Neal,*
   779 F.3d 634 (7th Cir. 2015) .............................................27

*Miller-El v. Dretke,*
   545 U.S. 231 (2005) ...................................................Passim

*Miller-El v. Cockrell,*
   537 U.S. 322 (2003) ...............................27, 28, 30, 36

*Napue v. Illinois,*
   360 U.S. 264 (1959) ............................................................14

*Pitchford v. State,*
   45 So. 3d 216 (Miss. 2010) ........................................Passim

*Pitchford v. State,*
   240 So. 3d 1061 (Miss. 2017) ............................................12

*Powers v. Ohio,*
   499 U.S. 400 (1991) ............................................................35

*Purkett v. Elem,*
   514 U.S. 765 (1995) (per curiam ......................................33

*Ramey v. Davis,*
   942 F.3d 241 (5th Cir. 2019).......................................33, 41

*Ramseur v. Beyer,*
   983 F.2d 1215 (3d Cir.1992) ..............................................56

*Randall v. State,*
   716 So. 2d 584 (Miss. 1998) ..............................................35

*Reed v. Quarterman,*
   555 F.3d 364 (5th Cir. 2009)......................................Passim

*Rice v. Collins,*
   546 U.S. 333 (2006) ...................................................7, 8, 33

*Roper v. Simmons,*
   543 U.S. 551 (2005) ..............................................................2

*Russell v. Denmark,*
   68 F.4th 252 (5th Cir. 2023) ................................................26

*Scott v. Huber,*
   610 F. App'x 433 (5th Cir. 2015) ........................................55

*Seay v. State,*
   55 So. 2d 430 (Miss. 1951) ..................................................52

*Snyder v. Louisiana,*
   552 U.S. 472 (2008) ......................................................Passim

*Strauder v. West Virginia,*
   100 U.S. 303 (1880) ............................................................51

*Sullivan v. Louisiana,*
   508 U.S. 275 (1993) ............................................................54

*Tankleff v. Senkowski,*
   135 F.3d 235 (2d Cir. 1998) ...............................................56

*Taylor v. Maddox,*
   366 F.3d 992 (9th Cir. 2004) .............................................27

*Tumey v. Ohio,*
   273 U.S. 510, (1927) ..........................................................54

*United States v. Agurs,*
   427 U.S. 97 (1976) .............................................................14

*United States v. Bagley,*
   473 U.S. 667 (1985) ............................................................14

*United States v. Vasquez*-Lopez,
   22 F.3d 900 (9th Cir. 1994) ...............................................22

*Vasquez v. Hillery,*
   474 U.S. 254 (1986) ....................................................54, 55

*Waller v. Georgia,*
   467 U.S. 39 (1984) .............................................................56

*Weaver v. Massachusetts,*
   582 U.S. 286 (2017) ..........................................52, 54, 56

*White v. Thaler,*
   552 F. App'x 226 (5th Cir. 2013) ......................................25

*White v. Woodall,*
　572 U.S. 415 (2014) ................................................................27

Whitsey v. State,
　796 S.W.2d 707 (Tex.Crim.App.1989) ...............................37

*Williams v. Taylor,*
　529 U.S. 420 (2000) ..............................................................14

*Winston v. Boatwright,*
　649 F.3d 618 (7th Cir. 2011) ...............................................56

*Woodfox v. Cain,*
　805 F.3d 639 (5th Cir. 2015) ...............................................50

*Woodward v. State,*
　726 So.2d 524 (Miss. 1997) .................................................37

Statutes

28 U.S.C. § 2243 ......................................................................50
28 U.S.C. § 2254 .................................................................13, 26
28 U.S.C. § 2254(d) ............................................................17, 18
28 U.S.C. § 2254(d)(1) ....................................................Passim
28 U.S.C. § 2254(d)(2) ..........................................16, 27, 28, 31
28 U.S.C. § 2254(e)(1) ..............................................16, 27, 28
28 U.S.C. § 2254(e)(2) .............................................................14

Rules

Fed. R. App. P. 10(e) ..............................................................41
Fed. R. App. P. 32(a) ..............................................................59

## STATEMENT OF THE CASE

### I.  INTRODUCTION

The State has taken this appeal from the Northern District of Mississippi's grant of habeas corpus relief, entered on December 12, 2023 (the "Opinion"), due to the violation of *Batson v. Kentucky* in the prosecution's exercise of peremptory strikes against African-American venirepersons. ROA.18041-18060.

On February 9, 2006, a jury empaneled three days prior in the Grenada County Circuit Court, having already convicted Mr. Terry Pitchford of the murder of Mr. Rueben Britt the day before, sentenced Pitchford to death. *Pitchford v. State*, 45 So. 3d 216, 223 (Miss. 2010).

In the liability phase, the State had introduced evidence that early on Sunday, November 7, 2004, Pitchford, then 18 years old, and his co-defendant, Eric Bullins, aged 16 years, arrived at Britt's grocery and bait store with the intention of robbery. ROA.18041; *Pitchford v. State*, 45 So. 3d 216, 222 (Miss. 2010). Responding to a 911 call from customers who found the body of Britt behind the store counter, a Grenada County Sheriff's Department deputy identified at the scene that the victim's "wounds appeared to have been made by a [sic] projectile, and others by

1

pellets, suggesting . . . two different weapons were involved." *Pitchford*,

45 So. 3d at 222. Based on what is known to be the fifth such transcribed

statements from custodial interrogations of Pitchford by the Sheriff's

Department and District Attorney's Office,[1] conducted amid interviews

of Bullins and other teenagers in connection with the crime,[2] Pitchford

was deemed at trial to have "stated that Bullins had shot Britt three

times with a .22 caliber pistol,[3] and that he (Pitchford) had fired shots

---

[1] Pursuant to discovery under Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts (*infra* at n.16), it emerged that with respect to the proliferated transcriptions of statements purportedly given to deputies and investigators in their multiple interrogations of Pitchford and the various other teenage subjects in this case (*infra* n.2), none of the prior four alleged recordings was made available to federal counsel. *See* ROA.00013-00014.

[2] In addition to Eric Bullins, among those questioned were Demarquis Westmoreland (aged 18), and Quincy Bullins (aged 19, cousin of Eric), both of whom were also jointly indicted with Pitchford. ROA.17592-17593. Both testified against Pitchford at trial and nearly a year thereafter, in exchange for a suspended five-year sentence, Westmoreland pleaded guilty to conspiracy to commit a crime in connection with the attempted robbery of Britt's store. ROA.17414-17415. Quincy Bullins too received a five-year suspended sentence with three years' probation.

[3] The investigation immediately focused on 16-year-old Eric Bullins, but in the end, he never faced trial.

When arrested on November 7, 2004, after Britt's killing, Bullins was out on bond for cocaine and marijuana dealing charges. ROA.17349.

On January 10, 2005, Bullins was indicted for the capital murder of Britt. ROA.12050-12055. That same day, he was arraigned on his drug charges. ROA.12065-12067. On March 1, 2005, *Roper v. Simmons*, 543 U.S. 551 (2005), rendered any defendant under the age of 18 at the time of his crime ineligible for capital punishment. On March 21, 2005, while awaiting prosecution for the Britt murder, Bullins, with another inmate, murdered a third inmate in jail over a cigarette, stomping to death one Kenneth Kendall.

into the floor." *Pitchford*, 45 So. 3d at 223. The State's forensic pathologist, the late Steven Hayne, testified that Britt was shot five times with .22 caliber ammunition, yielding four lethal wounds, including one through his aorta ensuring immediate death.[4] ROA.17528-17529; Tr. 415.

---

On January 26, 2007, nearly a year after Pitchford's trial, Bullins—on District Attorney Doug Evans's express recommendation—pleaded guilty to manslaughter for the Britt robbery/murder. ROA.12116-12119. The District Attorney recommended Bullins receive a 20-year sentence, with 10 years to be served concurrent with the sentence imposed in the Kendall murder, which was 20 years, and 10 years to be served consecutive to the sentence imposed in Bullins's drug cases. ROA.12117. Circuit Judge Loper, who also presided over Pitchford's trial, accepted the guilty plea and recommendation and so sentenced Bullins to 20 years for Britt's murder. ROA.12121.

[4] The forensic evidence calls into question the prosecution's reliance on Pitchford's confession (*supra*) and the reliability of Hayne's autopsy findings concerning the .38 revolver's "rat shot"—pellets used for rodent control and not lethal for humans. Namely, Hayne cavalierly testified that as many as four shots were fired from the .38 (ROA.17528-17529). The pellets found at the scene and evidenced in the superficial pellet-strikes on Britt's upper arm and across his upper abdomen indicate he was likely falling to the floor or already on it by the time a single shot was discharged. ROA.00110, 00405. Hayne, who, himself, had claimed he "performed at least 1,000 autopsies per year since his admission to practice," *Edmonds v. State*, 955 So. 2d 787, 802 (Miss. 2007) (Diaz, P.J., specially concurring), had died prior to commencement of federal proceedings and thus was unavailable for deposition therein.

At trial, deputies testified to recovering a .38 revolver from Pitchford's car containing the remains of discharged rat shot cartridges and one unfired cartridge in the chamber. ROA.15803, 15806-15807. During discovery in the District Court (*infra*), it emerged that a separate .38 revolver, depicted on the store counter a few feet from Britt's body in crime scene photographs taken by sheriff's deputies but <u>never</u> taken into evidence, has never been recovered and, after exhaustive discovery efforts, is deemed destroyed, calling into grave question the State's theory of the role of the .38 caliber rat shot discharged in the course of the botched robbery. ROA.11165. The State insisted that Pitchford disarmed Britt, taking Britt's .38 revolver Pitchford assumed possessed lethal ammunition and firing it at Britt before fleeing with the revolver in hand (and leaving in his car for deputies to later collect). ROA.17551 (the

## II. BATSON CHALLENGES

## A. Trial Record

Pitchford's jury and alternates, which included a single African-American among thirteen (13) whites, was the product of District Attorney Doug Evans's use of peremptory strikes to eliminate four of the five black potential jurors from the venire's final group from which the parties struck the jury via twelve (12) peremptory strikes allotted to each side.[5]

This striking proceeded after two major stages. First, Circuit Judge Loper's initial excusals of the pool winnowed the panel from 126 to ninety-six (96), consisting of thirty-five (35) black and sixty-one (61)

---

revolver allegedly found in the car formed "the chains of the murder of Mr. Britt to Terry Pitchford"). Such a theory does not account for the photographed, but disappeared .38, and brings into focus the comprehensive unreliability of the investigation and prosecution, as chronicled in Pitchford's First Amended Petition prepared on the foregoing basis of extensive Rule 6 discovery concerning material and information suppressed in violation, e.g., of *Brady v. Maryland* and *Napue v. Giglio* (*supra* n.1, *infra* n.16).

[5] This prosecution spanned just four days in its entirety: jury selection and opening arguments took place on the first day (Feb. 6, 2006); the rest of guilt phase, including deliberations and verdict (returned at 4:00 p.m.) took place over the next two days (Feb. 7, & 8, 2006); penalty phase, including deliberations and sentencing verdict, took a single day with the verdict returned at 4:32 p.m. (Feb. 9, 2006). Tr. 166-816.

white persons.[6] Then, following voir dire,[7] the judge struck fifty-five (55) members for cause or other reasons (ROA.17939-17947), leaving forty-one (41) venire members, of which thirty-six (36) were white and just five were black.[8] *Pitchford*, 45 So. 3d at 223.

From this remaining group, who had been randomly assigned ordinal numbers at the outset, the parties were permitted to exercise peremptories "only on the twelve lowest-numbered members of the venire," and then, after each strike, "the next lowest-numbered juror joined the twelve potential jurors subject to peremptory strikes." *Pitchford*, 45 So. 3d at 223.

The State thus tendered venire members, in order of their assigned juror number, while indicating its exercise of any peremptories.

---

[6] Pitchford's venire commenced with 126 Grenada County residents who appeared from among the 350 summoned, including forty (40) black and eighty-four (84) white individuals, along with one Hispanic and one person who did not identify their race. *Pitchford*, 45 So. 3d at 222.

[7] This consisted of the judge's voir dire (ROA.17798-17869), and then the voir dire of Evans, for the State (ROA.17871-17894), Mr. Ray Charles Carter, for the defense (ROA.17894-17929), and further individual voir dire of the court and the parties concerning five venire members (ROA.17931-17939).

[8] The thirty (30) black venire members excused for cause in the foregoing step were eliminated primarily due to attributions respecting their views, which Evans used the duration of his individual voir dire to systematically elicit (*supra* n.7), on judging others and on the death penalty—leaving the five African-Americans at the center of the present appeal. *See* ROA.17947-17950.

ROA.17953. The defense then determined whether to accept the given tender or assert a peremptory. ROA.17953-17954.

In the State's first twelve, Evans exercised a single strike, on a white woman, and submitted twelve white persons. ROA.17953. The defense exercised seven strikes from that group. ROA.17954. The State then tendered seven more individuals, at which time it exercised its second, third, and fourth strikes against the black venire members. ROA.17954. During Evans's individual voir dire (*supra* n.7), he conducted no examination of these four prospective jurors whom he struck, apart from confirming with number 43 (Ms. Tidwell) the name of her cousin.[9] ROA.17871-17894 (239:18-262:06)); *Pitchford*, 45 So. 3d at 265-66 (Graves, J., dissenting).

The defense (Ms. Alison Steiner) then objected to these strikes, invoking *Batson v. Kentucky* in noting the State's "pattern of striking almost all of the available African-American jurors." ROA.17954-17955. Upon this objection, the trial court determined "it would be appropriate

---

[9] Thereafter, Evans would use just two more strikes to tender the jury and two alternates, leaving five strikes unused despite the presence, among the remaining group of several jurors of certain attributes that he cited as race neutral grounds for striking the four black venire members. *Pitchford*, 45 So. 3d at 227; *id.* at 264 (Graves, J., dissenting).

[for Evans to proffer race neutral reasons for his strikes] given the number of black jurors that were struck." ROA.17955. The trial court, finding that the defense made a *prima facie* case of the prosecution's discriminatory use of peremptories, satisfied *Batson*'s first step.[10] At this critical juncture, the record then reflects the trial judge's uncertainty about what *Batson* commands:

> THE COURT: And does counsel want the State to give race neutral [sic] as to all or just as to the individual – there were, I understand four black jurors. And I don't know if the State – if the defense wants the State to put forward race neutral [sic] as to all or just to the minority members.

> MS. STEINER: Well, Your Honor –

> THE COURT: A lot of times on Batson I just have the State gave [sic] race neutral [sic] as to all.

> MS. STEINER: I think the jurisprudence speaks for itself.

> THE COURT: If your objection is just as to members of the black panel – black jurors, then I will just have the State go forward and give them as to black members of the panel.

> MS. STEINER: Your Honor, I think the jurisprudence simply states that the Court must make a determination on the basis of all relevant circumstances to racial discrimination.

---

[10] The District Court's opinion here usefully block-quotes a Supreme Court recapitulation of *Batson*'s three steps. ROA.18045. Therein, the first step is described thusly: "First, the trial court must determine whether the defendant has made a *prima facie* showing that the prosecutor exercised a peremptory challenge on the basis of race." *Id.* (quoting *Rice*, 546 U.S. at 338).

ROA.17955-17956.

This wobbly colloquy before the judge's second step under *Batson* was a harbinger of the court's ultimately decisive error in failing to conduct *Batson*'s third step at all.

Upon the judge's instruction (*supra*), Evans proceeded to make proffers with respect to each of the four black venire members in question and, immediately after each such proffer, the trial court deemed the given reasons "race neutral." ROA.17957-17958[11] (*especially* ROA.17957:05, 179587:17, 17957:27, 17958:12-13). The trial court thus conducted *Batson*'s second step.[12]

But, as the District Court has put it, "The trial court then full-stop ended its *Batson* analysis." ROA.18051. Fatefully, the trial court failed to

---

[11] The content of these four proffers by Evans are critical in the ultimate determination of these challenges in the Mississippi Supreme Court, first (*infra* at 339 et seq.), and then, of course, in the Northern District of Mississippi by the Opinion at bar.

[12] Returning to *Rice v. Collins* (*supra* n.12; ROA.18045), the Supreme Court has explained: "Second, if the [*prima facie*] showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Although the prosecutor must present a comprehensible reason, '[t]he second step of this process does not demand an explanation that is persuasive, or even plausible'; so long as the reason is not inherently discriminatory, it suffices." *Collins*, 546 U.S. at 338 (internal citations omitted).

conduct step three's factual determinations contemplating whether purposeful discrimination precipitated any of these four strikes.[13]

Specifically, after Evans's fourth, and final, proffer, the trial court stated: "The Court finds that to be race neutral as well. So now we will go back and have the defense starting at [venire member no.] 37." ROA.17958. Thus, "Rather than turning to Pitchford and allowing him the opportunity to rebut the reasons articulated by the State, the trial court immediately continued with the juror selection conference." ROA.18051. After the resumption, with juror number 37, and the rapid conclusion of jury selection (ROA.17958:15-17962:23), the defense immediately reiterated their *Batson* challenge, whereupon the trial court admonished counsel she had "already made it in the record" and repeated its mere conclusion that Evans's "reasons were race neutral" (ROA.17963:05-17964:04).

As the District Court reasoned, the "exchange evinces an attempt by Pitchford's counsel to argue pretext that was thwarted, although likely unintentionally so, by the trial court's abrupt conclusion that there had

---

[13] This 80% strike rate for black venire members contrasts with the State's use of three strikes across 35 white venire members, or an 8.5% strike rate for whites. ROA.00129, 17478, 17979; Tr. 321-29.

been no *Batson* violation." ROA.18053. Beyond foreclosing further record development, the trial court's response again failed to make anything even resembling the requisite factual determinations under *Batson*'s third step.

## B. Appellate Decision

On direct review, the Mississippi Supreme Court correctly identified that the "three-step inquiry" under *Batson* enforces the prohibition of purposefully discriminatory peremptories and "forbids striking even a single juror for a discriminatory purpose." *Pitchford*, 45 So. 3d 216, 224 (Miss. 2010) (citing *Snyder v. Louisiana*, 552 U.S. 472 (2008)). With respect to that third step, the court characterized Pitchford's argument on appeal as belatedly attacking as pretextual the State's race neutral reasons at trial and blamed Pitchford for "not presenting [his pretext] arguments to the trial court during the voir dire process or during post-trial motions," thus faulting him for "provid[ing] the trial court [with] no rebuttal to the State's race-neutral reasons." *Id*. Further, the court concluded that the "totality of the circumstances"

analysis Pitchford espoused was merely an "attempt to present his pretext argument in another package." *Id.*[14]

The trial record, as the District Court recognizes (*infra* at 13-16), belied this blame-laying upon Pitchford. As noted, the trial court immediately and unequivocally terminated consideration of the *Batson* challenges in his very next breath after deeming race neutral the State's proffer for the fourth peremptory challenge. *Supra* at 9. Underscoring this reality is the trial court's refusal to entertain, at all, the defense's insistence on returning to the *Batson* challenges immediately after the court named the jury and alternates just minutes after concluding the State's proffers of race neutral reasons. ROA.17954-17961.

Ordinarily, the matter of pretext is decisive in relation to *Batson*'s step-three; it is the substance for a proper step-three analysis *when a third step has been taken*. But the appellate court's preoccupation with the notion obscures the trial court's obvious failing: Circuit Judge Loper

---

[14] In any case, the court refused to look at the record. *Id.* at 228 n.17 ("We agree with Presiding Justice Graves's argument that—in adjudicating the pretext issue—the trial judge must look at the totality of the circumstances and all of the facts. However those circumstances and facts do not include arguments not made by Pitchford's counsel."). *See, e.g., Chamberlin v. Fisher*, 885 F.3d 832, 843 (5th Cir. 2018) ("considering the totality of the circumstances conforms with *Batson*, *Miller-El* II, 545 U.S. at 239], and *Snyder*[, 552 U.S. at 478]").

simply did not make the actual findings that *Batson* unambiguously requires. The central questions on review were, did the trial court make the factual determinations concerning the prosecutor's credibility in each of the four discrete peremptory challenges that *Batson*'s third step requires and, if so, does each such determination of the prosecutor's credibility withstand clear error review? *See Snyder*, 552 U.S. at 479 (*infra* at 19-23).

The answer to the first question is an indisputable *no*. This eliminates the derivative second question. Blinking reality, the Mississippi Supreme Court elected to avoid the inquiry entirely, a decision anathema to the Equal Protection Clause jurisprudence at issue here. *Id.*

## III. COLLATERAL REVIEW

After the foregoing direct appeal, Pitchford sought state post-conviction relief represented by the Mississippi Office of Capital Post-Conviction Counsel, wherein the state supreme court affirmed the circuit court's denial of relief. *Pitchford v. State*, 240 So. 3d 1061 (Miss. 2017).

On January 3, 2018, Pitchford moved the Northern District of Mississippi for the appointment of counsel to pursue relief from his

conviction and sentence under 28 U.S.C. § 2254. ROA.00001-00014. After filing an initial habeas corpus petition on September 17, 2018 (ROA.00100-00365), Pitchford successfully moved on November 14, 2018 (ROA.01614-01637), for discovery under Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts, seeking, inter alia, the production of records and information suppressed contrary to *Brady v. Maryland*, and related authorities. ROA.01895-01896.

Due to the State's incomplete compliance, the District Court entered several additional discovery orders[15] entailing the production of further documents and the deposition of eleven individuals from the local sheriff's department, the state crime lab, and the two trial prosecutors directly responsible for the investigation of, and prosecutions for, Britt's murder.

On February 13, 2023, Pitchford filed his First Amended Petition presenting twenty-six grounds for relief, most of which resulted from the emergence of previously suppressed or otherwise unavailable information and evidence via the foregoing discovery process.[16]

---

[15] *See* ROA.02350-02353, 02370-02372, 02903-02906, 02936.

[16] These grounds relate to an array of prosecutorial misconduct issues, particularly for suppressed or destroyed evidence in violation of, *e.g.*, *Brady v. Maryland*, 373 U.S.

ROA.17459-17783. Among these dozens of grounds is the present jury discrimination claim pursuant to *Batson v. Kentucky*,[17] which, for the sake of obviating further proceedings on his other meritorious claims requiring, inter alia, determinations on complex evidentiary and procedural questions, precipitated Pitchford's motion for partial summary judgment on June 12, 2023,[18] resulting in the District Court's order and opinion at bar granting relief as to that single claim (ROA.18041, 18059), ordering Pitchford's conditional release within 180 days, and entering final judgment on December 12, 2023. ROA.18041-

---

83, 87 (1963); *United States v. Bagley*, 473 U.S. 667, 676 (1985); *Giglio v. United States*, 405 U.S. 150, 154 (1972); *Kyles v. Whitley*, 514 U.S. 419, 438 (1995); *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *United States v. Agurs*, 427 U.S. 97, 103 (1976); *California v. Trombetta*, 467 U.S. 479, 488-99 (1985).

Further, these grounds intrinsically "fall outside the opening clause" of 28 U.S.C. § 2254(e)(2), which provides conditions when an evidentiary hearing may be precluded. *(Michael) Williams v. Taylor*, 529 U.S. 420, 430 (2000) (explaining that (e)(2) "applies only to prisoners who have 'failed to develop the factual basis of a claim in State court proceedings.'").

[17] 476 U.S. 79 (1986). ***Not*** presently before this Court, however, is a separate jury discrimination claim predicated upon evidence emerging via Rule 6 discovery and extrinsic to the trial record. Entirely independent from the trial court's misapplication of *Batson* and its appellate review, this jury discrimination claim reflects deeply problematic records and testimony betraying discriminatory purpose in Evans's use of peremptories. *See* ROA.17966 n.1; *see generally* ROA.16374, 16585.

[18] The State's procedural recitation incorrectly asserts that "the parties filed cross motions for partial summary judgment." Doc. 33 at 21. Simultaneous with its response in opposition to Pitchford's motion for partial summary judgment, the State filed a motion for full summary judgment. ROA.17994.

14

18060. On January 12, 2024, the District Court granted Appellant's motion to stay its judgment pending this appeal. ROA.18114-18115.

Observing that "*Batson* was well-settled law" at the time of Pitchford's 2006 trial, the District Court's Opinion explains that the trial court somehow "seemingly failed to conduct the third *Batson* inquiry." ROA.18053. Rather than make the fact findings required of a trial court after the first two steps that *Batson* dictates, the judge "full-stop ended" (ROA.18051) his consideration of the challenges immediately after concluding that each of the prosecutor's proffers were race neutral.

As the District Court puts the "sequence of events:"

First, Pitchford raised his *Batson* challenge; then, the trial court implicitly found a prima facie showing had been made by requesting race-neutral reasons from the State; the State articulated its reasons for striking Lee, Tillmon, Tidwell and Ward; the trial court deemed all explanations as sufficiently race-neutral; *and that was it*.

ROA.18053 (emphasis added).

Indeed, "and that was it." However, since *Batson*, a court faced with any such challenge of a peremptory strike, let alone four of them, was obligated to make factual determinations as to discriminatory purpose. *Infra* at 19-24. The trial court, having made nothing of that sort for any of the four challenges, rendered a record the state supreme court could

not usher away from the Equal Protection Clause. The state supreme court's resulting factual bases for its opinion thus runs afoul of § 2254(d)(2) and, separately, its misapplication of *Batson* to that record also fails, thereby far exceeding the exacting criteria under § 2254(d)(1). The application of (d)(2) and (d)(1), alike, necessitate relief from Pitchford's unconstitutional judgment.

## SUMMARY OF THE ARGUMENT

The Northern District of Mississippi identified the trial court's omission of *Batson*'s third, and decisive, step of a factual determination on the prosecutor's purposeful discrimination and the resulting failure in the state court's rejection of all four *Batson* challenges. The trial court's lack of any such factual determination established "clear and convincing evidence," per § 2254(e)(1), that the state supreme court rendered "a decision based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." § 2254(d)(2). Further, the state supreme court's rejections of each of the four *Batson* challenges were not merely unfounded, these constituted an unreasonable application of the *Batson* authorities, per § 2254(d)(1).

Additionally, because the erroneous denial of a *Batson* challenge is structural, vacatur of the judgment and conditional release is required.

Pursuant to the two discrete bases, this Court should affirm the District Court's grant of relief under both sub-paragraphs (2) and (1) of § 2254(d).

## ARGUMENT

## I. BACKGROUND: THE MISSISSIPPI SUPREME COURT'S MISAPPLICATION OF BATSON RISES TO "EXTREME MALFUNCTION"

### A. Introduction.

Upon Pitchford's *Batson* objection immediately following District Attorney Evans's four consecutive peremptory strikes against black venirepersons, the unfolding Grenada County Circuit Court record reflects the trial court's failure to conduct the crux of the *Batson* inquiry.

The judge had muddled through step one (*supra* at 7) and tersely disposed of step two (*supra* at 8). "The trial court," as the Opinion at bar observes, "then full-stop ended its *Batson* analysis." ROA.18051. At bottom, the trial court's failure to determine "the ultimate question of discriminatory intent represents a finding of fact." *Hernandez v. New York*, 500 U.S. 352, 359 (1991). While it is a finding "of the sort accorded

great deference on appeal," *id.*, it is subject to reversal pursuant to clear error review, *Snyder v. Louisiana*, 552 U.S. 472, 474 (2008), and—crucially for *this* appeal from the District Court—it is of a kind that is even susceptible to relief under the further exacting standards of 28 U.S.C. § 2254(d). *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (*"Miller-El II"*).

Faced with this fatal breach of the Fourteenth Amendment's Equal Protection Clause, the state supreme court's dissembling answer to the constitutional question posed on direct appeal improperly transformed the prosecution's merely proffered race neutral reasons into judicial fact findings, establishing the absence of purposeful discrimination in the exercise of each of the four strikes where *none* had been determined. Proper regard for the Supreme Court's then-recent opinion in *Snyder* should have prevented the state supreme court's grave misstep, as *Snyder* made plain that an appellate court could not construe such an extraordinarily inadequate *Batson* trial record in the manner on display in *Pitchford v. State*, 45 So. 3d 216 (Miss. 2010).

## B. The State Courts' Failures to Consider the Credibility of the Prosecutor's Strikes Fatally Flawed the Outcome.

*Batson* enunciated a "three-step process for a trial court to use in adjudicating a claim that a peremptory was based on race," *Snyder*, 552 U.S. at 472, and during the intervening four decades, the Supreme Court has, on every occasion, recognized the indispensable quality of *Batson*'s three steps. *See, e.g.*, *Foster v. Chatman*, 578 U.S. 488, 499 (2016).

While the *Batson* first-step inquiry of a *prima facie* case was not seriously in question, the state supreme court devoted pages of makeweight discussion to it, *Pitchford*, 45 So. 3d at 224-26, concluding, indeed, that "[w]e cannot say the trial court abused its discretion in finding that Pitchford made a prima facie case of discrimination." *Id.* at 226.

Then turning to *Batson*'s second step, the state court block-quoted *Lynch v. State*, 877 So. 2d 1254, 1270 (Miss. 2004), for the proposition that the supreme court "give[s] great deference to the trial court's findings of whether or not a peremptory challenge was race-neutral." *Id.* The opinion next turned to evaluating the proffers Evans gave for each of the four black venire members he struck and for whom the trial court found those proffers "race neutral." *Id.* at 226-27. The subsequent four

paragraphs of the state court opinion, which concerned "pretext" and concluded the opinion's analysis of the *Batson* challenges, are decisive. *Id.* at 227 ¶¶ 28-32.

These paragraphs characterize Pitchford's argument on appeal as attacking the State's race neutral reasons at trial as pretextual and blame Pitchford for "not presenting [his pretext] arguments to the trial court during the voir dire process or during post-trial motions[,]" and thus faulting him for "provid[ing] the trial court [with] no rebuttal to the State's race-neutral reasons." *Id.* Further, the court concluded that the "totality of the circumstances" analysis Pitchford espoused was merely an "attempt to present his pretext argument in another package."[19] *Id.*

The trial record, as the District Court recognizes (*infra* at 15), belies this blame-laying upon Pitchford. The trial judge immediately and unequivocally terminated consideration of the *Batson* challenges in his very next breath after deeming race neutral the State's proffer for the fourth challenge. *Supra* at 9. Underscoring this reality is the trial court's refusal to entertain, at all, the defense's insistence on returning to the

---

[19] The per se application of *Batson* is addressed below in relation to § 2254(d)(1) (*infra* at 32-39).

*Batson* challenges immediately after the court named the jury and alternates. ROA.17963:05-17964:04.

The Mississippi Supreme Court's foregoing treatment of the trial court record excised the center of the matter under *Batson*. But the crux of the proper appellate inquiry must center on the third step, specifically, the "trial court's ruling on the issue of discriminatory intent." *Snyder*, 552 U.S. at 477.

On direct appeal, a trial court's determination of *Batson* discrimination "must be sustained unless it is clearly erroneous." *Id.* (citing *Hernandez v. New York*, 500 U.S. 352, 369 (1991) (plurality) (O'Connor, J., concurring in judgment)). Fundamentally, "[t]he trial court has a pivotal role in evaluating *Batson* claims. Step three of the *Batson* inquiry involves an evaluation of the prosecutor's credibility," *id.* (citing *Batson*, 476 U.S. at 98), "and the best evidence of discriminatory intent often will be the demeanor of the attorney who exercises the challenge," *id.* (quoting *Hernandez* , 500 U.S. at 365 (cleaned up)).

As Justice Alito further explained,

> race-neutral reasons for peremptory challenges often invoke a juror's demeanor (e.g., nervousness, inattention), making the trial court's firsthand observations of even greater importance. In this situation, the trial court must evaluate

not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor. We have recognized that these determinations of credibility and demeanor lie "'peculiarly within a trial judge's province'" and we have stated that "in the absence of exceptional circumstances, we would defer to the trial court."

552 U.S. at 477 (quoting *Hernandez*, 500 U.S. at 366) (cleaned up).

It was incumbent on the trial court to make credibility determinations of Evans in relation to his four proffers, but the judge made none. In *Snyder*, the petitioner's *Batson* claim concerned two peremptories, which the prosecutor exercised to exclude a Mr. Brooks and a Ms. Scott from the jury. 552 U.S. at 477. In establishing that the Equal Protection Clause "forbids striking even a single prospective juror for a discriminatory purpose," (quoting *United States v. Vasquez*-Lopez, 22 F.3d 900, 902 (9th Cir. 1994)), the Supreme Court's analysis centered upon the strike against Brooks (which obviated its need to review the Scott strike because it found the trial court committed clear error in overruling the defense's *Batson* objection to the Brooks strike). *Id.* at 478.

Where, as here, the trial court has simply failed to make any specific determination on the record concerning the proffered basis for a strike, it "cannot be presume[d] that the trial judge credited the

prosecutor's assertion." *Id.* at 479 (ruling that even under clear error review, demeanor-based reason for strike is not creditable absent any step-three fact finding); *Hayes v. Thaler*, 361 F. App'x 563, 569 (5th Cir. 2010) (reversing district court denial of writ, finding clear and convincing evidence to the contrary of state court fact findings in *Batson* violation) (citing *Snyder*, 552 U.S. at 479).

Due to the identity of Pitchford's prosecutor, the need for the requisite trial court credibility determinations could not have been greater than in this trial, as reflected in the raft of litigation concerning District Attorney Evans's prosecutorial misconduct, especially concerning *Batson* (but far from *limited* to *Batson*), that the state courts had accumulated by the time the supreme court decided Pitchford's direct appeal (and, of course, well beyond 2010).

In 2007, the Mississippi Supreme Court decided the appeal from Evans's third trial of Mr. Curtis Flowers in Montgomery County Circuit Court, wherein "[t]he State exercised a total of 15 peremptory strikes, and it used all 15 against black prospective jurors." *Flowers v. Mississippi*, 588 U.S. 284, 290 (2019) (reversal of sixth trial of Flowers from *Batson* violation) (*infra* Part III). On Flowers's appeal, he

challenged the strikes against eleven (11) of the individuals Evans struck, whereupon the court determined that *six* of the strikes violated *Batson. See, e.g., Flowers v. State*, (Miss. 2007) (cited in *Pitchford*, 45 So. 3d at 224 n.7 (noting that "after a race-neutral explanation has been offered by the prosecution, the trial court must determine whether the objecting party has met its burden")).

Rightly, the District Court's Opinion considers some of this history predating Pitchford's 2010 appeal, while recognizing that "the troubling case history as set forth [in the Supreme Court in *Flowers, supra*] by the same district attorney in the same judicial district did not exist as we know it today." ROA.18059. That said, by the time of Pitchford's trial and direct appeal, the body of evidence manifesting this district attorney's intentions in striking capital juries was very clear and already, plainly discriminatory to a degree perhaps unsurpassed in state annals, if not national history. Mary Carroll Sullivan, *Timeline of Curtis Flowers Case*, WCBI (Dec. 15, 2019),[20] https://www.wcbi.com/timeline-curtis-flowers-case/; Peter Yesko, *How Can Somone be Tried Six Times for the Same*

---

[20] Compare the Curtis Flowers trials timeline to these dates: jury selection in Pitchford's trial took place on February 6, 2006, and his direct appeal was decided on June 24, 2010.

*Crime?*, APM (May 1, 2018), https://features.apmreports.org/in-the-dark/curtis-flowers-trial-six-jury-selection/.

### C. This Failure of the Mississippi Supreme Court to Apply *Batson* Jurisprudence Constitutes "Extreme Malfunction."

As the Supreme Court has repeatedly underscored, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *White v. Thaler*, 552 F. App'x 226, 228 (5th Cir. 2013) (per curiam) (quoting *Harrington v. Richter*, (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Steven, J., concurring in the judgment))). As the foregoing state court record betrays, the breakdown in the operation of *Batson* that transpired over the course of the four discrete challenges is, under the foregoing circumstances, extraordinary and requires, in these federal proceedings, § 2254(d)'s application, as set forth below.

### II. ISSUE 1: SATISFACTION OF BOTH OF § 2254(D)'S DISJUNCTIVE STANDARDS PREDICATE THE WRIT'S GRANT

Under the Antiterrorism and Effective Death Penalty Act of 1996, a petitioner may obtain relief from a state court constitutional violation by satisfying the requirements and attendant considerations of either

sub-paragraph (d)(1) or sub-paragraph (d)(2) of 28 U.S.C. § 2254. The state supreme court's erroneous misapplication of *Batson* in Pitchford's direct appeal satisfies both (d)(2) *and* (d)(1). The District Court's Opinion correctly identifies these tandem bases. ROA.18059.

## A. Standard of Review

 On appeal from a grant of habeas corpus relief, this Court reviews the District Court's legal conclusions de novo and may only overturn its factual findings if they are clearly erroneous. *E.g., Russell v. Denmark*, 68 F.4th 252, 261 (5th Cir. 2023). Not only is an ultimate *Batson* challenge determination a fact-finding, it is also necessarily predicated on specific fact and credibility findings. *Infra.*

Under § 2254(d)(1), an "unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002); *see also White v. Woodall*, 572 U.S. 415, 426 (2014) ("a state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case.").

An "unreasonable determination of the facts" may be in a state court's findings of fact and conclusions of law on the merits. *See, e.g.,*

*Miller-El II*, 545 U.S. at 236-37; *Brumfield v. Cain*, 576 U.S. 305, 307 (2015); *Guidry v. Dretke*, 397 F.3d 306, 325-27, 329 (5th Cir. 2005). Section 2254(d)(2) is satisfied where a state court merits determination is "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (*"Miller-El I"*). In addition, a factual determination infected by an erroneous legal standard is unreasonable. *McManus v. Neal*, 779 F.3d 634, 660 n.12 (7th Cir. 2015); *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

Further, § 2254(d)(2) operates independently from § 2254(e)(1). It is wrong "to merge the independent requirements of §§ 2254(d)(2) and (e)(1)." *Miller-El I*, 537 U.S. at 341. "AEDPA does not require petitioner to prove that a decision is objectively unreasonable by clear and convincing evidence." *Miller-El I*, 537 U.S. at 341.

**B. The State Court's Unreasonable Fact Determinations Require Relief.**

To obtain a writ of habeas corpus via § 2254(d)(2), relief may be obtained "only by showing the [state court] conclusion to be 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Miller-El II*, 545 U.S. at 240 (quoting §

2254(d)(2)). As *Miller-El II* explains, the federal courts are to presume the state appellate court "factual findings to be sound unless [petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.'" *Id.* (quoting § 2254(e)(1)); *Reed v. Quarterman*, 555 F.3d 364, 368 (5th Cir. 2009) (reversing district court denial of *Batson* claim under § 2254(d)(2), granting writ and conditional release).

While this deferential standard is "demanding," it is "not insatiable." *Id.* Further, "[d]eference does not by definition preclude relief." *Miller-El I*, 537 U.S. 322, 340 (2003) (quoted in *Miller-El II*, 545 U.S. at 240); *Chamberlin v. Fisher*, 885 F.3d 832, 836 (5th Cir. 2018) (en banc). In sum, [w]hile AEDPA review is highly deferential, we note that it is not perfunctory." *Hayes v. Thaler*, 361 F. App'x 563, 566 (5th Cir. 2010) (reversing district court denial of *Batson* claim, granting the writ and ordering Hayes's release or retrial within 120 days).

### 1. The trial court record lacks any factual determination of the State's intent in striking the four black venirepersons.

Pitchford's trial record is devoid of any *Batson* step-three factual conclusion. The total absence of any even arguable fact finding from Circuit Judge Loper satisfies the "clear and convincing evidence" standard required under (e)(1). *Reed*, 555 F.3d at 380 (finding (e)(1)

burden met, applying (d)(2) to reject as "mere pretexts for discrimination" the State's proffered reasons for two prospective black venirepersons).[21] This is an unusual trial record. As noted above, the trial judge's unsure footing with *Batson* offers the most apparent explanation for this breakdown in the process. The District Court is sympathetic toward the trial judge's missteps, but correctly identifies the fatal failing in the trial court's record. ROA18053. Thirteen years earlier, in 2010, the state supreme court had needed to identify this failing too. Instead, it sidestepped the central matter of the claim. *Supra*.

The state supreme court's fact determinations blinker the cold record on appeal. *Batson* cases rise and fall on the finding from the inquiry's third step of whether the given strike was purposely discriminatory. Plainly, for this inquiry, any such "ultimate conclusion of discriminatory intent is a factual finding." *Hayes*, 361 F. App'x at 567 (citing *Ladd v. Cockrell*, 311 F.3d 349, 356 (5th Cir. 2002)). Further, "the critical question in determining whether a prisoner has proved

---

[21] In *Reed*, the trial court, on remand from the Texas Court of Criminal Appeals, deemed that the proffered race neutral reasons for the prosecution's strikes against five African-American venirepersons were valid, but did not make findings as to discriminatory intent for these strikes. *Reed*, 555 F.3d at 368. Rather, the trial court only "concluded that the defendant had failed to refute the State's race-neutral explanations for the strikes." *Id.* at 369.

purposeful discrimination at step three is the persuasiveness of the prosecutor's justification for his peremptory strike. At this stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Miller-El I*, 537 U.S. at 338-39 (internal quotation marks and citation omitted) (quoted in *Hayes*, 361 F. App'x at 567).

In the absence of an explicit trial court fact finding that a prosecutor's proffered race neutral reason was truthful, *Batson*'s third step is simply unmet. *Hayes*, at 574 (citing *Snyder*, 552 U.S. at 479).

*Hayes* is illuminating on the critical distinction between validity and credibility in a prosecutor's given proffer. *Id.* Unlike Pitchford's trial court, Mr. Hayes's trial judge *made* findings as to the proffers with respect to black venirepersons whom the prosecution struck, yet this Court's examination under § 2254(d)(2) concluded that the trial judge's analysis spoke to *Batson*'s second step rather than, critically, its third. *Id.* From consideration of the trial court's discussion of the conceptual availability of the prosecutor's purported strike reason (namely, "hostility" attributed to the venireperson), this Court found:

> It appears that the trial judge's analysis was based upon whether the proffered explanation was a "valid" reason to

> strike a juror peremptorily, not on whether the reason given was "true" or, more pointedly, whether the prosecutor was telling the truth.

*Id.* Further, the Court explained that "the state trial judge unreasonably failed to apply clearly established law to the facts by failing to examine not just the validity of the reason but the credibility of the prosecutor." *Id.*

Comparing this record with Pitchford's, there is no mistaking that the latter's judge conducted nothing resembling a finding as to Evans's truthfulness and, rather, just failed to carry out the *Batson* inquiry to its conclusion. In the record at bar, the rapid-fire "race neutral" findings the trial court gave for Evans's proffers —with no further finding in any of the four instances—leaves nothing to the imagination. ROA.17954-17964. The trial judge just failed to fulfill *Batson*'s requirement.

### 2. *The state supreme court's findings are completely unsupportable and necessitate the writ.*

The clear and convincing evidence in this trial court record of no step-three fact finding with respect to any of the four *Batson* challenges renders the state supreme court's factual determinations completely unsupportable, in turn, rendering this erroneous state court conclusion also unreasonable, per (d)(2), and therefore necessitous of a writ

reversing the judgment. *Miller-El II*, 545 U.S. at 266; *Reed*, 555 F.3d at 380 (reversing district court denial of writ, finding determinations under (d)(2) that "State's asserted reasons for striking [two] prospective black jurors were mere pretexts for discrimination"). The District Court's present ruling should stand.

## C. The State Court's Unreasonable Application of Law Requires Relief.

### 1. The state supreme court's rejection of "totality of the relevant facts" review contravened *Batson*.

The District Court's Opinion also satisfies § 2254(d)(1) because the state supreme court applied the *Batson* line to conclude that a trial court's denial of *Batson* objections[22] may satisfy *Batson*'s three-step inquiry without any step-three fact determination. The state appellate court decision affirmed the trial court merely upon satisfaction of the step-two burden—a showing merely that the State's proffers amounted to race neutral reasons satisfying the anemic step-two criteria that even "a frivolous or utterly nonsensical justification" can meet. *Johnson v. California*, 545 U.S. 162, 171 (2005) (citation omitted); *see Ramey v.*

---

[22] The objections at bar challenge four strikes and thus, given that a single strike requires reversal, necessitate four appellate inquiries unless reduced by the reversal of any one of them. *Snyder*, 522 U.S. at 478.

*Davis*, 942 F.3d 241, 252 (5th Cir. 2019) ((citing *Rice v. Collins*, 546 U.S. 333 (2006) (noting step-two reasons need only appear "not inherently discriminatory") (quoting *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995) (per curiam) (explaining the step-two proffer need not be "persuasive, or even plausible")) (granting certificate of appealability on district court's denial of *Batson* claim). This constitutes an unreasonable application as contemplated under § 2254(d)(1).

Plainly the step-two "frivolous or utterly nonsensical" showing is not remotely commensurable with the trial court's required credibility determination under step three regarding the prosecutor's proffers. *Snyder*, 552 U.S. at 477 (citing *Batson*, 476 U.S. at 98) (noting highly deferential standard of review for step-three determinations). Absent explicit fact finding on the ultimate question of discriminatory intent, a trial court's mere acceptance of the prosecutor's proffer cannot be presumed to satisfy *Batson*. *Id.* at 552 U.S. at 485 (reversing capital judgment due to trial court's absence of credibility finding on prosecutor's proffered reasons, concluding under *Batson*'s established burden allocation that strike was "motivated in substantial part by discriminatory intent").

In Pitchford's appeal, the Mississippi Supreme Court baldly misstated the clearly established law since *Batson*, a jurisprudence which that court had previously correctly invoked. The state supreme court reasoned that the trial court's duty to evaluate the totality of the circumstances of the given strikes somehow "do[es] not include arguments not made by Pitchford's counsel." *Pitchford*, 45 So. 3d at 228 n.17.[23] As then-Presiding Justice Graves's dissenting opinion noted, a dozen years earlier, *Randall v. State*, 716 So. 2d 584, 587 (Miss. 1998), correctly discussed *Powers v. Ohio*, 499 U.S. 400 (1991), and *Batson* in that vein:

> In that case the Supreme Court held that Powers, a white, had standing to challenge the exclusion of black jurors on the grounds that the equal protection right of the juror to serve was protected by *Batson*. *Powers*, 499 U.S. at 406. Essentially, this means that step three above becomes the pivotal inquiry to determine a prima facie case, as this Court recognized in *Davis v. State* [citation omitted]. Specifically, the pivotal question is whether the opponent of the strike has met the burden of showing that proponent has engaged in a pattern of

---

[23] Pervading Pitchford's direct appeal is the state supreme court's erroneous blaming of defense counsel for not advancing arguments during voir dire that Pitchford posed on direct appeal, finding them waived on direct review. 45 So. 3d at 228. As underscored herein, the defense cannot be blamed for not advancing those arguments given the trial judge's repeated foreclosure of any attempt to speak on the matter at all immediately following the trial court's conclusion of its step-two determinations that Evans's proffers were race neutral. *Supra* at 9. But more to the point, the courts' reviews of all circumstances is obligatory and independent of the defense's performance at trial. *Miller-El II*, 545 U.S. at 252.

34

strikes based on race or gender, or in other words "the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Batson*, 476 U.S. at 94.

*Pitchford*, 45 So. 3d at 261 (Graves, P.J., dissenting) (quoting *Randall v. State*, 716 So. 2d 584, 587 (Miss. 1998)).

Further, in *Miller-El II*, the Court reiterated a trial court's requirement "to assess the plausibility of that [proffered race neutral] reason *in light of all evidence with a bearing on it.*" 545 U.S. at 251-52 (emphasis added) (citing *Batson*, 476 U.S. at 96-97); *Miller-El I*, 537 U.S. at 339. At bottom, "If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false." *Miller-El II*, 545 U.S. at 252.[24]

A central problem in the state supreme court's reasoning stems from its discrediting of Pitchford's appellate marshalling of the trial record in demonstration of the disparate treatment the four black venire

---

[24] *Miller-El II* emphasizes that, "[a] *Batson* challenge does not call for a mere exercise in thinking up any rational basis." When a *prima facie* case for racial discrimination is made "a prosecutor simply has got to state his reasons as best he can and stand or fall on the credibility of those reasons." *Id*. In other words, the prosecutor has to give race-neutral reasons, and the court must make a credibility determination of the proffer to determine whether or not the reasons are pretextual.

members whom Evans struck received vis-à-vis the venire's white members:

> Although Pitchford devoted a considerable portion of his brief and oral argument before this Court to his pretext argument, he did not present these arguments to the trial court during the voir dire process or during post-trial motions.

*Pitchford*, 45 So.3d at 227. The state supreme court continued: "This Court has held that, '[i]f the defendant fails to rebut, the trial judge must base his [or her] decision on the reasons given by the State.'" *Id.* at 227 n.16 (citing, *Berry v. State*, 802 So.2d 1033, 1037(Miss. 2001); *Manning v. State*, 735 So.2d 323, 339 (Miss. 1999); *Woodward v. State*, 726 So.2d 524, 533 (Miss. 1997)). This mischaracterizes Mississippi law,[25] but more directly to the point in the present federal constitutional inquiry, this contravenes *Batson*.

For example, this Court has found that the trial court must conduct comparative juror analysis in the record even when "neither defendant presented a comparative analysis." *Reed v. Quaterman*, 555 F.3d 364, 373 (5th Cir. 2009). *Reed* observed that *Miller-El II* presented effectively the

---

[25] Mississippi has long recognized that "'lack of record support for the stated reason'" is one of the "indicia for pretext" in *Batson* step three analysis. *Manning*, 765 So. 2d at 519 (quoting *Mack v. State*, 650 So.2d 1289, 1298 (Miss.1994) (citing Whitsey v. State, 796 S.W.2d 707, 707 (Tex.Crim.App.1989)).

same situation when the "Supreme Court, on habeas review, considered the entire voir dire transcript because the comparative analysis simply was a theory that involved the evidence before the state court." *Id*. Even though, in *Reed*, the highest state court ignored the transcript, this Court understood "the entire voir dire transcript did not disappear from the record for purposes of federal habeas review." *Id*. at 374-75. This Court concluded, "Therefore, the entire voir dire transcript—and the comparative analysis, which is a theory that relies upon the voir dire—is properly before this court on habeas review." *Id*. at 375.[26]

By not considering "all relevant circumstances," Pitchford's state court, in contravention of § 2254(d)(1), plainly misapplied the clearly established *Batson* jurisprudence set forth, inter alia, in *Miller-El II*, 545 U.S. at 252. Evaluation of a trial court's exercise of discretion in denying a challenged peremptory strike is subject to facial scrutiny from the totality of the record:

> A *Batson* challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not

---

[26] *Reed* also cites *Miller El II*, 545 U.S. at 246 ((citing *Ex parte Travis*, 776 So.2d 874, 881 (Ala.2000) ("[T]he State's failure to engage in any meaningful voir dire examination on a subject the State alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination."). *Reed*, 555 F.3d at 377.

> hold up, its pretextual significance does not fade because a
> trial judge, or an appeals court, can imagine a reason that
> might not have been shown up as false.

*Id.; cf. Miller-El II*, 545 U.S. at 278 (Thomas, J., dissenting) ("Miller-El

did not even attempt to rebut the State's racially neutral reasons at the

hearing. He presented no evidence and made no arguments.").

Further, the state supreme court's dissenting opinion once again

pointed out the majority's error in contravention of clearly established

Supreme Court jurisprudence: "Pitchford may rebut the State's evidence,

but there is no requirement under *Batson* that Pitchford *must* then rebut

the rebuttal before the trial court." *Pitchford*, 45 So.3d at 267 (Graves,

P.J., dissenting) (citing *Flowers v. State*, 947 So.2d 910, 917 (Miss. 2007).

Finally, in assessing the totality of the circumstances concerning

any given peremptory strike, all things "that bear upon the issue of racial

animosity must be consulted." *Snyder*, 552 U.S. at 478 (citing *Miller-El*

*II*, 545 U.S. at 239). In a case with multiple race-challenged strikes, the

State's explanation for one should be considered in relation to another

strike unless a certain strike "is by itself unconvincing and suffices for

the determination that there was *Batson* error." 552 U.S. at 478; accord

*Hayes v. Thaler*, 361 F. App'x 563, 567 (5th Cir. 2010) ("When reviewing

a *Batson* ruling, because 'all of the circumstances that bear upon the issue of racial animosity must be consulted,' this court may consider the strike of one juror for any relevance it might have regarding the strike of another juror.") (quoting *Snyder*, 552 U.S. at 478).

> 2. *Examination of the trial record with respect to the State's strikes reflect pretext and purposeful discrimination.*

For the present (d)(1) analysis, the hypothetical inquiry this case raises borders on the absurd: treating step-two "frivolous or utterly nonsensical" showings (*Johnson,* 545 U.S. at 171) for the four strikes as though the trial judge's repeated "race neutral" pronouncements—with nothing more—constituted step-three factual determinations on purposeful discrimination. However, the totality of the circumstances before the trial court included extensive evidence of disparate

treatment[27] and disparate questioning,[28] evidence that Pitchford's appeal underscored and the state court wrongly disregarded.[29]

<u>Patricia Anne Tidwell, Venire Member 18</u>

Ms. Patricia Tidwell generally favored the death penalty. R. 787-90. A 37-year-old African-American woman, Evans used his fourth strike against her:

> MR. EVANS: S-4 is juror number 43, a black female, Patricia Anne Tidwell. Her brother, David Tidwell, was convicted in this court of sexual battery. And her brother is now charged in a shooting case that is a pending case here in Grenada. And also, according to police officers, she is a known drug user.
>
> THE COURT: During voir dire, in fact, I made a notation on my notes about her being kin to this individual. I find that to be race neutral.

---

[27] *Hayes v. Thaler*, 361 F. App'x 563, 567 (5th Cir. 2010) (recognizing that *Batson* requires comparative analysis for disparate treatment, but the fact that the comparative evidence may show discriminatory intent even when the individuals compared are not "identical in all respects") (citing *Miller El II* at 47 n.6).

[28] *Miller-El II*, 545 U.S. at 246 (quotation omitted):

> The State's failure to engage in any meaningful voir dire examination on a subject the State alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination.

[29] Below, extensive reference is made to the trial court record, which, due to the procedural posture of the litigation at the time of the partial summary judgment, the State had not submitted to the District Court record pursuant to Rule 5(c) of the Rules Governing Section 2254 Litigation in the District Courts. *See generally*, *Ramey*, 942 F.3d at 253-54 (granting COA, finding "it is acceptable to supplement the record to include 'juror cards from the trial . . . to assist in the comparative [juror] analysis.'") (quoting *Hayes*, 361 F. App'x at 574 n.8).

Tr. 325.[30]

The State failed to make any record substantiating that Tidwell was "a known drug user." A large segment of the Sheriff's Department was under subpoena at that time and thus these officers were available to make an actual record of this drug use, which was belied by the lack of any indication of arrests, let alone convictions, of Tidwell for such behavior. Even a specific assertion concerning such purported grounds for striking someone should precipitate a third step hearing, but the court failed to proceed in that manner despite the vague quality of this claimed reason for striking Tidwell.

Further, Evans seemed to consolidate into one person issues relating to two separate people (David Tidwell and an unnamed brother), betraying a lack of familiarity with cases that his office would have prosecuted, calling into question the actual impetus for his use of a strike and underscoring the four strikes made in succession against African-Americans.

---

[30] Given the way the litigation transpired in the District Court, culminating in partial summary judgment prior to the State's answer to the pleading, the state court record has yet to be formally deposited there. Accordingly, it is not in this ROA. Pitchford has moved the District Court pursuant to Fed. R. App. P. 10(e) to add the transcript to the record in order to transmit a certified copy to this Court.

## Linda Ruth Lee, Venire Member 30

District Attorney Evans struck Linda Ruth Lee, a 27-year-old African-American woman and the first black venire member presented to the State, doing so without posing a single question to her during voir dire. R. 635, Tr. 324-25. In her questionnaire, Lee answered that she "generally" though not "strongly" favored the death penalty. R. 638. Among the white venirepersons the State found acceptable, half gave that same response. But in striking Lee, Evans could offer only these reasons:

> MR. EVANS: Yes, sir. S-2 is black female, juror number 30. She is the one that was 15 minutes late. She also, according to police officer, police captain, Carver Conley, has mental problems. They have had numerous calls to her house and said she obviously has mental problems. Juror Number S-3—
>
> THE COURT: That would be race neutral as to – as to that juror.

Tr. 324-25. As with Mr. Ward (*infra*), the trial court conducted no further inquiry and accepted wholesale that purported rationale.

The District Attorney's conjecture that Lee had a history of mental problems purportedly came from Carver Conley, one of the officers who investigated the Britt murder. This basis remained entirely unsubstantiated, untested, and would have been, were it not for the legal

nature of the proceedings, libelous. This was so, even though Investigator Conley happened to be under subpoena and thus could have been made to answer questions concerning Evans's attribution to him about Lee. R. 215. In this instance, the State's election not to attempt to make a record of the factual premise for striking Lee taken from the factual claim the State attributed to Investigator Conley betrays the fact that that rationale was a mere pretext—and a thinly disguised one, at that.

Neither Lee's juror questionnaire responses nor answers to voir dire suggested any mental health issues. Yet the State did not opt to question, nor did the court instruct, Evans to voir dire the panel collectively or Lee, or any other venire member, individually with regard to mental illness or health issues. Tr. 239-62.

The record does reflect that Lee was late in returning from lunch. It also reflects disparate treatment on lateness. Several other jurors apparently failed to return from lunch on time, thus delaying resumption of the proceedings. Tr. 238-39. However, Evans made no attempt to remove any venire member for that reason other than Lee. Tr. 307-18. The initial thrust of the State's defense of its facially pretextual basis for striking Lee hinged on her innocuous and explained lateness in returning

to the courthouse. Initially, while seeking to strike her for cause, Evans did not even mention Lee's purported, and never substantiated, mental problems. Tr. 318. After the court rejected her lateness as an acceptable cause for striking Lee, Evans secured additional time for preparation of his peremptory challenge. Tr. 319. About a half-hour later, Evans then injected the specter of Lee's mental instability into the record in his effort to justify this plainly race-based strike. *Id.*

Christopher L. Tillmon, Venire Member 31

Mr. Tillmon's questionnaire reflected he was 27 years old and "strongly favor[ed]" the death penalty. R. 799-802. The State accepted two similarly situated white males from the venire.[31] The questionnaire also reflected Tillmon had worked in law enforcement, *id.*, another highly coveted characteristic in the prosecution's typical selection of a capital jury. Nonetheless, without posing a single question to Tillmon during voir dire, Evans used a peremptory strike against him:

> MR. EVANS: S-3 is a black male, number 31, Christopher Lamont Tillmon. He has a brother that has been convicted of manslaughter. And considering that this is a murder case, I

---

[31] Brantley Clark, Venire Member 19, R. 417-20; Michael Sherman, Venire Member 17, R. 761-64.

don't want anyone on the jury that has relatives convicted of similar offenses.

THE COURT: What was his brother's name?

MR. EVANS: I don't even remember his brother. He said that he had a brother convicted of manslaughter.

Tr. 325.

The State's disparate treatment of two similarly situated white venire members betrays the illegitimate reasons for striking Tillmon. Mr. Jeffrey Counts, Venire Member 74, 37 years old, was seated as Juror 12 despite disclosure in his questionnaire that his uncle was a convicted felon. Tr. 328, R. 479-90, 1104. Also, the State accepted Mr. Henry Bernreuter, Venire Member 65, despite disclosure that his son and his stepson had been convicted of serious felonies (burglary and forgery, respectively). Tr. 326, R. 399-400. The State failed to question Messrs. Tillmon, Counts, and Bernreuter about the convictions of certain family members that each had identified in his questionnaire. In striking Tillmon, and not striking the others, the State conducted no voir dire on the topic of this purported reason. The lack of questioning betrayed Evans's lack of familiarity with the venire member's brother, much less any particulars concerning the underlying issue pretextually relied on in striking Tillmon.

## Mr. Ward, Venire Member 48

The State sought to justify its use of a peremptory on Carlos F. Ward (No. 48), with a facially discriminatory reason. Tr. 322. The record here provides:

> MR. EVANS: Juror number 5 is juror number 48 on the list, a black male, Carlos Ward. We have several reasons. One, he had no opinion on the death penalty. He has a two year old child. He has never been married. He has numerous speeding violations that we are aware of. The reason that I do not want him as a juror is he is too closely related to the defendant. He is approximately the age of the defendant. They both have children about the same age. They both have never been married. In my opinion he will not be able to not be thinking about these issues, especially on the second phase. And I don't think he would be a good juror because of that.

> THE COURT: The Court finds that to be race neutral as well. So now we will go back and have the defense starting at 37.

Tr. 325-26.

Evans's reasoning behind striking Ward was facially demographic—the espoused rationale was that Ward was "too closely related to" Pitchford. This relation, of course, was not familial, as there is no suggestion of there being any such relationship between the two men. Further, the pretextual quality of the stated reasons is plain when assessed with reference to numerous white venire members who possessed at least one of the characteristics the State invoked in

justifying his strike of Ward. Direct comparisons with 11 white venire members accepted by the State illuminates Evans's pretext here.[32]

[32] *Whites with young children*:

Sherman, Michael (tendered by State, Tr. 321), daughter 2½ years old, son 3 months; R. 763;

Wilbourn, Lisa (Alternate 2, R. 1104), son 23 months old, R. 837;

Parker, Lisa (tendered by State, Tr. 321), 6-year-old child, R. 701;

Tramel, Nathalie Drake (Alternate 1, R. 1104), 4-year-old daughter, 5-year-old son, R. 808;

Ward, Laura Candida (Juror 5, R. 1104), 6-year-old daughter, R. 817;

Marter, Stephen Abel, Jr. (tendered by State, Tr. 321), 4-year-old daughter, 5-year-old son, R. 808;

Curry, Michael (tendered by State, Tr. 328), 5-year-old son, R. 497.

*Unmarried whites*:

Eskridge, Chad (Juror 2, R. 1104), never married, R. 527;

Denham, Kenton (tendered by State, Tr. 322), divorced, R. 525;

Counts, Jeffrey S. (Juror 12, R. 1104), divorced, R. 481;

Brewer, Mary W. (Juror 6, R. 1104), widowed, R. 421.

*Whites of similar age*:

Clark, Brantley (tendered by State, Tr. 321), age 22, R. 417;

Eskrdige, Chad (Juror 2, R. 1104), age 25, R. 527;

Sherman, Michael (tendered by State, Tr. 321), age 27, R. 761;

Wilbourn, Lisa (Alternate 2, R. 1104), age 28, R. 835;

Parker, Lisa (tendered by State, Tr. 321), age 29, R. 699.

*Whites sharing more than one of the D.A.'s posited traits*:

Eskridge, Chad (Juror 2, R. 1104), age, unmarried, R. 527-29;

Ward, Laura C. (Juror 5, R. 1104), young children, no opinion on D.P., R. 817-18;

Tramel, Nathalie D. (Alt. 1, R. 1104), young children, no opinion on D.P., R. 805-06, Tr. 255;

Parker, Lisa (tendered by State, Tr. 321), age, young children, R. 699-701;

Evans's use of Ward's speeding traffic violations and expression of no opinion on the death penalty were spurious. The juror questionnaire inquired about criminal charges and convictions but specifically excluded, with the State's assent, traffic violations. R. 352-53, Tr. 4. If the State researched Ward's driving record, the record suggests it was not interested in the entire panel in that regard. Further, there is no indication at all of any record establishing the existence of such driving violations. Concerning the absence of opinion on capital punishment, the State used this attitude to justify striking Ward despite failing to employ the criterion in striking whites with a commensurable view on the question. The State accepted two white venire members despite indistinguishable questionnaire answers from Ward's.[33] As with the others, neither Evans nor the trial court posed a single question to Ward. Evans faced no impediment in probing any of these reasons with Ward under oath. Their pretextual quality is particularly obvious in the wider

---

Wilbourn, Lisa (Alt. 2, R. 1104), age, young children, R. 835-37;

Sherman, Michael (tendered by State, Tr. 321), age, young children, R. 761-63.

[33]     *Whites lacking opinion on death penalty*:

Ward, Laura C. (Juror 5, R. 1104), R. 818;

Tramel, Nathalie D. (Alt. 1, R. 1104), R. 806, Tr. 255.

frame of reference of Evans's handling of the venire. *See Snyder*, 552 U.S. at 478 ("[T]his court may consider the strike of one juror for any relevance it might have regarding the strike of another juror.").

III. **ISSUE 2: BECAUSE ERRONEOUS DENIAL OF A *BATSON* CHALLENGE IS STRUCTURAL ERROR, REVERSAL IS REQUIRED, AND THE DISTRICT COURT'S REMEDY IS NOT AN ABUSE OF DISCRETION.**

### A. Standard of Review

"In federal habeas cases, district courts have 'broad discretion in conditioning a judgment granting habeas relief.'" *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). 28 U.S.C. § 2243 provides that the district court is to "dispose of the matter as law and justice require." This Court has observed:

> The typical remedy in habeas corpus is physical release. Habeas exists to enforce the right of personal liberty; when that right is denied and a person is confined, the federal court has the power to release him. Indeed, it has no other power; *it can only act on the body of the petitioner.*

*Jones,* 600 F.3d at 541 (quotation omitted) (emphasis original).

Accordingly, review of habeas remedies is for abuse of discretion. *Woodfox v. Cain,* 805 F.3d 639, 644 (5th Cir. 2015).

**B. *Batson* Addresses a Fundamental Equal Protection Right Affecting the Integrity of the Entire Criminal Prosecution.**

*1. Batson Provides a Remedy Addressing an Unremitting History of Discrimination.*

After the Civil War amendments abolished slavery and guaranteed the equal protection of the law, some states still excluded black people from serving on juries by statute, until *Strauder v. West Virginia*, 100 U.S. 303 (1880), struck down those statutes. *See Batson*, 476 U.S. at 85. As the Court noted, *Strauder* "laid the foundation for the Court's unceasing efforts to eradicate racial discrimination in the procedures used to select the venire from which individual jurors are drawn." *Id.*

Those efforts have been unceasing owing to the importance of the right, (*id.* ("Exclusion of black citizens from service as jurors constitutes a primary example of the evil the Fourteenth Amendment was designed to cure.")), and because that evil persistently circumvents the Equal Protection Clause.

For example, by the middle of the twentieth century, Mississippi struggled with practices that, in effect, excluded all blacks from serving on grand and petit juries in a county with a significant population of eligible black persons for at least a thirty-year span. *Seay v. State*, 55 So.

2d 430, 432 (Miss. 1951).[34] "In the century after *Strauder*, the freedom to exercise peremptory strikes for any reason meant that 'the problem of racial exclusion from jury service' remained 'widespread' and 'deeply entrenched.'" *Flowers*, 588 U.S. at 295-96 (quoting 5 U. S. Commission on Civil Rights Report 90 (1961)). "More than a century" after *Strauder*, the Court found that a failure to prove that peremptory strikes were not used to mask intentional racial discrimination in jury selection "require[s] that petitioner's conviction be reversed." *Batson*, 476 U.S. at 85, 100; *accord Weaver v. Massachusetts*, 582 U.S. 286, 288 (2017).

### 2. District Attorney Evans

This history continued into the twenty-first century, as starkly shown in the cases of District Attorney Evans. In *Flowers*,[35] the Supreme Court recounted that "Flowers has been tried six separate times for the murders . . .. The same state prosecutor tried Flowers each time. The

---

[34] In *Seay*, the Mississippi Supreme Court ordered the conviction vacated and the indictment quashed despite the fact that there was "nothing in the record now before us to indicate that a mixed grand jury of white and colored jurors would have reached any different conclusion as to whether or not an indictment should be returned than was reached by the all white grand jury which returned this indictment, nor is there anything to indicated that such a petit jury would have reached a different result than that reached on the trial of the present case against the appellant" *Id.* at 432.

[35] As the District Court points out, much of this saga was judicially noticeable at the time of Pitchford's trial and most at the time of the direct appeal, yet the Mississippi Supreme Court failed to discuss it. ROA.18058-18059.

prosecutor is white." 588 U.S. at 289. The first conviction and death sentence, which raised a strong prima facie *Batson* challenge, was reversed on appeal owing to "numerous instances of prosecutorial misconduct" so predominating that the supreme court never reached the *Batson* claim. *Id*. at 289-90. Virtually the same thing happened in the second trial (reversed on other claims of prosecutorial misconduct). *Id*. at 290. As discussed herein (*supra* at 23-24), the third conviction and death sentence was reversed on appeal because Mr. Evans violated *Batson*—no fewer than in the exercise of peremptories against six venirepersons (having used all 15 strikes against black persons). *Id*. at 291. At the fourth trial, Mr. Evans used all eleven peremptories to strike black venirepersons, but the seated jury nonetheless included five black jurors, and the result was a hung jury at guilt phase. *Id*. The fifth trial was also a hung jury. *Id*. The sixth trial, of course, resulted in a conviction and death sentence, reversed by the Supreme Court due to Mr. Evans's *Batson* violations. *Id*. at 315-16.

## C. Erroneous Denial of a *Batson* Challenge Is Structural Error, Demanding Reversal of the Trial Court Judgment.

*Weaver* is controlling. *It* recognizes abundant Supreme Court "precedents deeming certain errors structural and requiring reversal

because of fundamental unfairness of fundamental unfairness." 582 U.S. at 288 (citing *Sullivan v. Louisiana*, 508 U.S. 275, 278-79 (1993); *Tumey v. Ohio*, 273 U.S. 510, 535, (1927); *Vasquez v. Hillery*, 474 U.S. 254, 261-64 (1986)).

Structural error encompasses a limited set of categories of constitutional error that requires automatic reversal because the rights are so important and fundamental to a fair trial because they "affect the framework within which the trial proceeds" as opposed to "simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991) (Rehnquist, C.J, writing for the Court).

*Weaver* explicitly noted that "race or gender discrimination in jury selection" is structural and requires reversal. 582 U.S. at 288 (citing *e.g.*, *Batson*, 476 U.S. at 100). In finding that racial discrimination in the grand jury is structural error, the Court has observed that this claim, like other Equal Protection Clause violations requires "mandatory reversal." *Vasquez*, 474 U.S. at 264.

Relying on these precedents, this Court has recognized the structural error doctrine's inclusion of the erroneous denial of a *Batson* challenges. *Scott v. Huber*, 610 F. App'x 433, 434 (5th Cir. 2015); *Reed*,

555 F.3d at 365 ("We therefore reverse and remand to the district court with instructions to grant the writ [issued for a *Batson* violation] and order Reed's release from custody unless the State grants him a new trial within 120 days from the date the district court's order."); *Chamberlin v. Fisher*, 885 F.3d 832, 860 (5th Cir. 2018) (Costa, J., dissenting) (Structural errors are those that "so fundamentally infect the process . . . that a new trial is required regardless of how strong the evidence against the defendant is").[36] Numerous sister circuits have also long understood that erroneous denial of a Batson challenge is structural and requires automatic reversal. *E.g., Harrison v. Ricks*, 1450 F. App'x 95, 96 (2d Cir. 2005) (citing *Tankleff v. Senkowski*, 135 F.3d 235 (2d Cir. 1998); *Forrest v. Beloit Corp.*, 424 F.3d 344, 349 (3d Cir. 2005) (citing *Ramseur v. Beyer*, 983 F.2d 1215, 1225 n.6 (3d Cir.1992) (en banc)); *Drain v. Woods*, 595 F. App'x 558, 583 (6th Cir. 2014); *Winston v. Boatwright*, 649 F.3d 618, 633 (7th Cir. 2011).

The remedy the State proposes is contrary to the rationale for the structural error doctrine which is "to ensure insistence on certain basic,

---

[36] There is no disagreement between the majority and dissent on this point, because the majority found there was no error and accordingly did not discuss any remedy. *Chamberlin*, 885 F.3d at 844 (majority op.).

constitutional guarantees that should define the framework of the criminal trial." *Weaver*, 582 at 295. Their requested remedy (Doc. 33 at 37) not only falls outside the scope of habeas corpus (*see Jones,* 600 F.3d at 541), it defies structural error doctrine by leaving the trial court judgment standing, and merely remanding for a new direct appeal on the same record available to the District Court.

In any case, the State cannot show the District Court abused its discretion in fashioning a writ as law and justice requires by relying on inapposite and non-binding authority. Doc. 33 at 38. *Waller v. Georgia*, 467 U.S. 39, 50 (1984), and *Jackson v. Denno*, 378 U.S. 368, 394 (1964), are cases granting a writ conditioned on the state court conducting a hearing on admissibility of trial evidence, which is "error which occurred during the presentation of the case to the jury" or quintessential "trial error" which does not require automatic reversal. *Fulminante*, 499 U.S. 279, 307. The other two cases, *Jones v. West*, 555 F.3d 90, 102 (2d Cir. 2009), and *Coulter v. Gilmore*, 155 F.3d 912, 922 (7th Cir. 1998), are non-binding examples in which a court has granted the type of remedy the State here suggests. Even ignoring that these opinions are not reconcilable with the structural error doctrine adopted in those circuits,

the fact that they have issued the type of writ the State wants is no authority that the District Court's order here is an abuse of discretion. Indeed, the State fails to provide any authority that issuing a writ reversing the trial court judgment, as per the well-established structural error doctrine, is somehow an abuse of the District Court's discretion.

## CONCLUSION

The District Court correctly determined that the state court adjudication of Pitchford's record-based Batson challenge was unreasonable under § 2254(d)(1) and (d)(2), and the writ issued is within the District Court's discretion. Accordingly, Pitchford respectfully requests this Court affirm the District Court's grant of habeas relief.

Respectfully submitted by,

*/s Joseph J. Perkovich*
Joseph J. Perkovich
Phillips Black, Inc.
PO Box 3547
New York, NY 10008
(212) 400-1660

*/s J. Scott Gilbert*
J. Scott Gilbert
Watkins & Eager PLLC
The Emporium Building
400 East Capitol Street
Jackson, MS 39201
(601) 965-1922

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). This brief contains 12,348 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief also complies with the typeface requirements of Fed. R. App. P.32(a)(5), and type style requirements of Fed. R. App. P. 32(a)(6). It has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14 point font, with footnotes in Century Schoolbook 12 point font.


*/s Joseph J. Perkovich*
Joseph J. Perkovich