Case No. 23-70009

**IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT**

Terry Pitchford,
*Petitioner-Appellee*,

v.

Burl Cain, Commissioner, Mississippi Department of Corrections; Lynn Fitch, Attorney General for the State of Mississippi,
*Respondents-Appellants*.

Appeal from the United States District Court
For the Northern District of Mississippi
No. 4:18-cv-00002-MPM

# PETITIONER-APPELLEE'S RESPONSIVE SUPPLEMENTAL BRIEF

Joseph J. Perkovich
Phillips Black, Inc.
PO Box 3547
New York, NY 10008
(212) 400-1660
j.perkovich@phillipsblack.org

Joseph C. Welling
Phillips Black, Inc.
100 N. Tucker Blvd., Ste. 750
St. Louis, MO 63101
(314) 629-2492
j.welling@phillipsblack.org

J. Scott Gilbert
Watkins & Eager PLLC
The Emporium Building
400 East Capitol Street
Jackson, MS 39201
(601) 965-1922
sgilbert@watkinseager.com

*Attorneys for Petitioner-Appellee*

## CERTIFICATE OF INTERESTED PERSONS

*Pitchford v. Cain*, 23-70009

Undersigned counsel of record certify, pursuant to Circuit Rule 28.2.1, that there are no persons with a financial interest in the outcome of this case. The Appellee's name and the names of counsel involved in this case are listed below. This information is provided for the judges of this Court to evaluate possible recusal or disqualification:

Terry Pitchford, Petitioner-Appellee
J. Scott Gilbert, Joseph J. Perkovich, Joseph C. Welling, Counsel for Petitioner-Appellee
Burl Cain, Respondent-Appellant
Lynn Fitch, Respondent-Appellant
Scott G. Stewart, Attorney for Respondents-Appellants
Justin L. Matheny, Attorney for Respondents-Appellants
LaDonna Holland, Attorney for Respondents-Appellants
Allison K. Hartman, Attorney for Respondents-Appellants

Joseph Loper, state court judge who presided at trial and post-conviction
Doug Evans, prosecutor, first chair
Clyde Hill, prosecutor, second chair
Ray Charles Carter, Pitchford's trial and direct appeal attorney, first chair;
Ray Baum, Pitchford's trial attorney, second chair
Alison Steiner, trial attorney, co-counsel; direct appeal attorney, second chair
Patrick Joseph McNamara, Jr., attorney for the State on direct appeal
Jamila K. Alexander Virgil, Pitchford's state post-conviction attorney

Louwylynn Vanzetta Williams, Pitchford's state post-conviction attorney
Cameron Leigh Benton, attorney for the State in post-conviction
Jason L. Davis, attorney for the State in post-conviction

August 31, 2026

*/s Joseph J. Perkovich*
Attorney of Record for Petitioner-Appellee

## STATEMENT ON ORAL ARGUMENT

This is a capital case in which the Supreme Court reversed this Court's reversal of the District Court's grant of the writ of habeas corpus upon a finding that the state court adjudication relied on unreasonable determinations of fact and was contrary to or an unreasonable application of clearly established federal law pursuant to 28 U.S.C. § 2254(d)(1) and (2). Oral argument is warranted to address the Supplemental Briefing.

## TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS ................................ ii**

**STATEMENT ON ORAL ARGUMENT ........................................... iv**

**TABLE OF CONTENTS .......................................................... v**

**TABLE OF AUTHORITIES ........................................................ vi**

**INTRODUCTION ................................................................. 1**

**STANDARD OF REVIEW ......................................................... 9**

**ARGUMENT ....................................................................... 10**

**I. THE STATE SEEKS THIS COURT'S RELITIGATION OF THE SUPREME COURT'S REVERSAL AND REMAND. ..... 10**

**II. PITCHFORD'S EQUAL PROTECTION RIGHTS WERE VIOLATED WITHOUT REMEDY FROM THE STATE COURTS. ............ 16**

**A. This Violation Is Structural and Requires Reversal. .......... 16**

**B. The *Pitchford* Dissent Mischaracterizes What Remains on Remand. ............ 19**

**III. THE DISTRICT COURT'S CONDITIONAL WRIT IS WARRANTED. ............ 23**

**IV. ALTERNATIVELY, THE RECORD OVERWHELMINGLY SUPPORTS A FACT-FINDING OF INTENTIONAL RACIAL DISCRIMINATION. ............ 25**

**CONCLUSION ...................................................................... 28**

**CERTIFICATE OF COMPLIANCE .............................................. 30**

# TABLE OF AUTHORITIES

Page(s)

Cases

*Porter v. McCollum*,
588 U.S. 30 (2009) .......... 22

*Batson v. Kentucky*,
476 U.S. 79 (1986) .......... Passim

*Bondi v. VanDerStok*,
604 U.S. 458 (2025) .......... 5

*CGL Underwriters v. Edison Chouest Offshore*,
8 F.3d 21 (5th Cir. 1993) .......... 13

*Flowers v. Mississippi*,
588 U.S. 284 (2019) .......... 3, 28

*Flowers v. State*,
773 So.2d 309 (2000) .......... 12

*Flowers v. State*,
842 So.2d 531 (2003) .......... 12

*Harrington v. Richter*,
562 U.S. 86 (2011) .......... 17

*Hernandez v. New York*,
500 U.S. 352 (1991) .......... 13

*Hernandez v. United States*,
888 F.3d 219 (5th Cir. 2018) .......... 25

*Hilton v. Braunskill*,
481 U.S. 770 (1987) .......... 9

*Inwood Laboratories v. Ives Laboratories*,
456 U.S. 844 (1982) .......... 14

*Jackson v. Virginia*,
443 U.S. 307 (1979) .......... 17

*Johnson v. Williams*,
568 U.S. 289 (2013) .......... 11, 22, 23

*Jones v. Cain*,
600 F.3d 527 (5th Cir. 2010) .......... 9, 18

*Jordan v. Lefevre*,
206 F.3d 196 (2d Cir. 2000) .......... 14

*Keeney v. Tamayo-Reyes*,
504 U.S. 1 (1992) .......... 15

*Kennedy v. Braidwood Management, Inc.*,
606 U.S. 748 (2025) .......... 5

*Lockett v. EPA*,
319 F.3d 678 (5th Cir. 2003) .......... 25

*Miller-El v. Dretke*,
545 U.S. 231 (2005) .......... 2, 11, 12, 20

*Missouri v. Biden*,
No. 3:22-CV-01213, 2024 WL 5316601 (W.D. La. Nov. 8, 2024) .......... 4, 6

*Murthy v. Missouri*,
603 U.S. 43 (2024) .......... 4, 6, 7

*Pitchford v. Cain*,
608 U.S. __, 146 S.Ct. 1345 (2026) .......... 1

*Pitchford v. Cain*,
126 F.4th 422 (5th Cir. 2025) .......... 1, 3

*Pitchford v. Cain*,
706 F. Supp.3d 614 (N.D. Miss. 2023) .......... 1

*Pruitt v. State*,
986 So.2d 940 (Miss. 2008) .......... 26

*Purkett v. Elem*,
514 U.S. 765 (1995) .......... 13

*Rhoades v. Davis*,
914 F.3d 357 (5th Cir. 2019) .......... 10

*Rivera v. Illinois*,
556 U.S. 148 (2009) .......... 17

*Rompilla v. Beard*,
545 U.S. 374 (2005) .......... 22

*Salters v. New York City Transit Authority*,
No. 25-383-cv, 2026 WL 2276417 (2d Cir. Aug. 7, 2026)................20, 21

*Schriro v. Landrigan*,
550 U.S. 465 (2007) ....................................................................17

*Snyder v. Louisiana*,
552 U.S. 472 (2008) ........................................................3, 15, 17

*State v. Pitchford*,
45 So.3d 216 (2010) .....................................................1, 2, 3, 12

*Tankleff v. Senkowski*,
135 F.3d 235 (2d Cir. 1998) ........................................................14

*Townsend v. Sain*,
372 U.S. 293 (1963) ....................................................................15

*Valdez v. Cockrell*,
274 F.3d 941 (5th Cir. 2001)........................................................15

*Weaver v. Massachusetts*,
582 U.S. 286 (2017) ....................................................................16

*Williams v. Taylor*,
529 U.S. 362 (2000) ...............................................................15, 19

*Woodfox v. Cain*,
805 F.3d 639 (5th Cir. 2015)..........................................................9

<u>Statutes</u>

28 U.S.C. § 2243..........................................................................9

28 U.S.C. § 2254(d)(1) and (2) .......................................1, 5, 12

<u>Rules</u>

Fed. R. App. P. 32(a)...................................................................30

Fed. R. Civ. P. 52(a)....................................................................13

## INTRODUCTION

*Pitchford v. Cain*, 608 U.S. __, 146 S.Ct. 1345 (2026), completely reversed this Court's opinion, 126 F.4th 422 (5th Cir. 2025), which had overturned the District Court's opinion, 706 F. Supp.3d 614 (N.D. Miss. 2023), granting partial summary judgment and conditionally issuing the writ of habeas corpus after satisfying the exacting criteria under 28 U.S.C. § 2254(d)(1) *and* (d)(2) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), for relief from an Equal Protection Clause violation under *Batson v. Kentucky*, 476 U.S. 79 (1986), previously denied in state court, *State v. Pitchford*, 45 So.3d 216 (2010).

When the Supreme Court entirely reverses a court of appeals, as it has done here, the accompanying remand for further proceedings dictates the appellate court's clerical instruction to issue the mandate and return the case to the given district court. Here, the State of Mississippi seeks to preempt that ordinary course and secure from this Court an opinion flouting the Supreme Court and effectively re-asserting the very result the high court unambiguously overturned.

In *Pitchford*, the Supreme Court remedied the Mississippi state courts' extreme violations of Mr. Terry Pitchford's rights under the

Fourteenth Amendment to the United States Constitution. In issue were matters of both fact and law from the Mississippi Supreme Court's direct review of Pitchford's capital judgment. *Pitchford*, 45 So.3d 216. The state supreme court departed from the simple three-step framework enunciated in *Batson* in its failure to correct the Grenada County Circuit Court's frustration of *Batson*'s crucial third step during jury selection in Pitchford's 2006 trial. *Pitchford*, 146 S.Ct. at 1351–52.

The derailment of *Batson*'s third step violated the Equal Protection Clause. At that 2010 direct appeal, the state supreme court needed to do one of two things to rectify the constitutional breakdown: either consider the arguments on appeal of the prosecution's intentional discrimination in each of four challenged peremptory strikes—as the dissenting opinion undertook, *Pitchford*, 45 So.3d at 261, (Graves, P.J., dissenting)—or remand the case to the Grenada County Circuit Court for the trial judge to entertain these very questions and, as Justice Kavanaugh has now explained, "decide[] whether the prosecutor's race-neutral reason for striking a juror is pretextual 'in light of all evidence with a bearing on it.'" *Pitchford*, 146 S.Ct. at 1349 (quoting *Miller-El v. Dretke*, 545 U.S.

231, 252 (2005); citing *Flowers v. Mississippi*, 588 U.S. 284, 301–03 (2019); *Snyder v. Louisiana*, 552 U.S. 472, 478–79 (2008)).

Fatefully over 16 years ago, when the Mississippi Supreme Court had the responsibility and opportunity to remedy these serious constitutional errors, it neither adjudicated step three on the merits nor remanded the case to the trial court. Instead, that court determined that the defense counsel "had waived his opportunity to rebut the prosecutor's race-neutral reasons as pretextual at *Batson*'s third step." *Pitchford*, 146 S.Ct. at 1349.

After the District Court ruled that this breakdown at step three dictated relief, this Court reversed that lower court comprehensively. *Pitchford*, 126 F.4th at 43. In turn, the Supreme Court reversed this Court, leaving no open issues from the latter's opinion. *Pitchford*, 146 S.Ct. at 1353.

In the ordinary course, this Court recognizes upon a remand in which the Supreme Court has reversed the Court and therein settled the issues comprising its opinion that the next step is to further remand the case to the District Court with direction to apply the Supreme Court's opinion (coupled with instruction to the Clerk to issue the mandate

forthwith). *See, e.g.*, *Murthy v. Missouri*, 603 U.S. 43, 76 (2024) ("We therefore reverse the judgment of the Fifth Circuit and remand the case for further proceedings consistent with this opinion."), *on remand*, *Missouri v. Biden*, 114 F.4th 406 (5th Cir. 2024) (per curiam) ("Accordingly, we VACATE the judgment of the district court and the preliminary injunction in their entirety and REMAND for further proceedings consistent with the Supreme Court's opinion. The Clerk is directed to issue the mandate forthwith."), *on remand*, *Missouri v. Biden*, No. 3:22-CV-01213, 2024 WL 5316601 (W.D. La. Nov. 8, 2024) (permitting plaintiffs to conduct limited jurisdictional discovery concerning standing as outlined in *Murthy*, 603 U.S. at 76).

In *Pitchford*, the Supreme Court entirely decided the issues considered in this Court's prior opinion overturning the District Court. *Pitchford*, 146 S.Ct. at 1353. As stated in the majority opinion's penultimate sentence, the Supreme Court completely reversed the decision of this Court in favor of the opinion of the Northern District of Mississippi: "We agree with the U.S. District Court that the Mississippi Supreme Court unreasonably applied the clearly established *Batson* precedents and unreasonably determined that Pitchford waived his

opportunity to rebut the prosecutor's asserted race-neutral reasons for the peremptory strikes of four black prospective jurors. 28 U.S.C. §§ 2254(d)(1), (2)." *Id. Pitchford* then concluded, "We reverse the judgment of the U.S. Court of Appeals for the Fifth Circuit and remand the case for further proceedings consistent with this opinion." *Id.* This conclusion leaves, at this juncture, little to the imagination and perhaps even less work for this Court. *See, e.g.*, *Bondi v. VanDerStok*, 604 U.S. 458, 484 (2025) ("Because the court of appeals held otherwise, its judgment is reversed, and the case is remanded for further proceedings consistent with this opinion."), *on remand*, *VanDerStok v. Garland*, No. 23-10718, 2025 WL 1265648 (5th Cir. May 1, 2025) (per curiam) (unpublished) ("We therefore REMAND to the district court for proceedings consistent with the Supreme Court's decision.").

Even reversals wherein the Supreme Court addresses one ruling in the court of appeals' opinion but entirely ignores another ruling in that same circuit court opinion, a further remand directly to the district court is ordinarily the result. *E.g.*, *Kennedy v. Braidwood Management, Inc.*, 606 U.S. 748, 296 (2025) ("We reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this

opinion.”), *on remand, Braidwood Management, Inc. v. Becerra*, No. 23-10326, 2025 WL 2452041 (5th Cir. Aug. 26, 2025) (per curiam) (unpublished) (“The Court ... did not address Plaintiffs’ cross-appeal. Accordingly, we REMAND to the district court for further proceedings consistent with the Supreme Court’s decision and with those portions of our prior opinion that remain unaffected.”).

Unlike Justice Kavanaugh’s opinion here, in *Murthy*, a case in which this Court further remanded the case directly to the Western District of Louisiana, *Biden*, 2024 WL 5316601, Justice Barrett had explicitly stated, “At this stage, neither the individual nor the state plaintiffs have established standing to seek an injunction against any defendant. We therefore lack jurisdiction to reach the merits of the dispute.” *Murthy*, 603 U.S. at 56. *Murthy*’s remand plainly called for the resolution of an open issue, indeed, the central issue. Nonetheless, this explicit holding resulted simply in the case’s swift return to its district court, rather than intermediate litigation in the court of appeals.

In contrast, *Pitchford* leaves not a single issue for the lower courts. It simply rejects the rationale and opinion of this Court and embraces

that of the District Court. Yet the State seeks to divert the case's return to the lower court.

## OPPOSED MOTION FOR SUPPLEMENTAL BRIEFING

On June 29, 2026, the Supreme Court sent down its opinion to this Court and that same day, Respondents-Appellants' filed their Opposed Motion for Supplemental Briefing (the "Motion," or "Mtn.") ostensibly seeking briefing in this Court, before any remand to the District Court, to address the remedy called for in the Supreme Court's reversal of this Court's January 16, 2025, opinion.

The Motion urged that, "At the least, this Court must resolve the issue of remedy, which neither the Supreme Court nor this Court has addressed." Mtn. at 7. This premise misreads Justice Kavanaugh's opinion, which robustly embraces the District Court's opinion that this Court had erroneously overturned. *Infra*. The State's Motion continued, insisting that, "The release-or-retrial remedy that the district court ordered is improper given the state courts' error in this case." *Id*. Strikingly, the State further insisted that "[n]othing in the Supreme Court's decision calls into question that petitioner may be granted release or retrial only if he prevails on the merits of his *Batson* claim." Mtn. at 8.

On the contrary, there is nothing in the Supreme Court's opinion to suggest Pitchford must prevail on a reconstructed *Batson* step-three hearing in federal court.[1]

Further, the Motion secondarily urged the necessity of briefing on whether intentional discrimination can be found on this record, in habeas corpus proceedings, styling that question as driving at a decision on "the merits of petitioner's *Batson* claim now." Mtn. at 7.

The Motion correctly stated that the undersigned counsel for Pitchford "advised that they oppose this request and plan to file a response." Mtn. at 3. Two days later, on July 1, 2026, without the benefit of the promised response from Pitchford, Circuit Judge Duncan granted the State's requested briefing without any reasoning nor delimitation of scope. Dkt. 128-2. The State timely filed their opening brief. Dkt. 131.

[1] The State asserts that it has consistently taken the position "that appellate courts are equipped to resolve the merits of *Batson* claims by comparing the State's stated reasons for striking potential jurors to the voir dire record," Mtn. at 16 (quotations to prior pleading omitted), but cites no authority for the position that a conditional writ is not proper without the petitioner additionally showing intentional discrimination.

## STANDARD OF REVIEW

As argued herein, there is nothing left in this appeal to review. This may explain why the State has not submitted a standard of review statement in its Supplemental Brief.

Assuming arguendo this Court can review the District Court's remedy, the standard of review of a challenge to the choice of remedy is abuse of discretion.

"In federal habeas cases, district courts have 'broad discretion in conditioning a judgment granting habeas relief.'" *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). 28 U.S.C. § 2243 provides that the district court is to "dispose of the matter as law and justice require." This Court has observed:

> The typical remedy in habeas corpus is physical release. Habeas exists to enforce the right of personal liberty; when that right is denied and a person is confined, the federal court has the power to release him. Indeed, it has no other power; *it can only act on the body of the petitioner*.

*Jones,* 600 F.3d at 541 (quotation omitted) (emphasis original). Accordingly, review of habeas remedies is for abuse of discretion. *Woodfox v. Cain,* 805 F.3d 639, 644 (5th Cir. 2015).

## ARGUMENT

### I. THE STATE SEEKS THIS COURT'S RELITIGATION OF THE SUPREME COURT'S REVERSAL AND REMAND.

Seizing on the silence as to scope in Circuit Judge Duncan's order (Dkt. 131 at 7), the Supplemental Brief jettisoned the State's stated primary need for the briefing, electing not to submit any authority in support of its premise that this Court may refuse to afford Pitchford a remedy for this equal protection violation. In any case, there is no apparent legal support for the State's premise that this Court is positioned to conduct new fact findings upon this reversal and remand from the Supreme Court.[2]

The State devotes its briefing to its case that District Attorney Evans did not discriminate in any of the four challenges and that the ultimate question of intentional discrimination is dispositive at this

---

[2] In the State's Motion, it argued that *Rhoades v. Davis*, 914 F.3d 357 (5th Cir. 2019), is an instance of this Court conducting its own *Batson* analysis without remanding to the district court, and thus support for the Court now undertaking step three determinations on Pitchford's *Batson* challenges directly from the Supreme Court's remand. Mtn. at 10. In its Supplemental Brief, the State no longer presses that premise, while it cites *Rhoades* merely in support of certain findings in merits applications of *Batson*. Suppl. Br. at 21, 23. *Rhoades* concerned a panel of this Court reviewing a case pursuant to a certificate of appealability, conducting a comparative analysis after such analysis had been briefed in the district court but the lower court had not expressly conducted the analysis itself in deciding the *Batson* claim. *Rhoades*, 914 F.3d at 376. Rather than remand the appeal right back to the district court, the panel assessed the analysis to reach its merits conclusion.

point. *Id.* at 16–26. This theory on remand from the unequivocal reversal of this Court is founded upon a dubious view that the state courts can fail to honor the *Batson* framework and *not* violate a defendant's equal protection rights—or at least not violate them enough for relief—guaranteed under *Batson*'s step-three entitlements for defense counsel to be heard in rebuttal and for the trial court to expressly "decide[] whether the prosecutor's race-neutral reason for striking a juror is pretextual 'in light of all evidence with a bearing on it.'" *Pitchford*, 146 S.Ct. at 1349 (quoting *Miller-El*, 545 U.S. at 252). *Pitchford* itself puts the State's conception to rest, but the State seeks this Court's relitigation of the matter in contravention of the reversal and remand.

The State rehearses the voluminous traffic on the discrimination question suffusing the litigation up to, and within, the Supreme Court, espousing a blinkered view of the prosecutor and his conduct on this cold record while eliding the fact that any further consideration of this step-three question must be considered *de novo* because it in no way derives from the state court's *Batson* opinion, which the Supreme Court has freshly overruled. *Johnson v. Williams*, 568 U.S. 289, 302 (2013) (holding

federal court owes no § 2254(d) deference with respect to issue not adjudicated on the merits in state court).

As Pitchford's state appellate counsel argued circa 2010, there is considerable support for finding that District Attorney Evans discriminated in each of the four challenged strikes. *Pitchford*, 45 So.3d at 227. Further, when the trial court breached his step-three duty to decide for each of these strikes, "in light of all evidence with a bearing on it," *Miller-El*, 545 U.S. at 252, whether the prosecutor's proffers were pretextual, the weight of evidence before the court at that moment also manifests the equal protection violation at bar.[3] But the Supreme Court has enunciated the breach of *Batson*'s protection and unambiguously answered, in Pitchford's favor, the decisive question on the constraint on habeas corpus relief from § 2254(d). Pitchford is entitled to the writ that the District Court providently ordered in 2023.

[3] Beyond what was transpiring before the Honorable Joseph Loper in the courtroom amid these *Batson* challenges, the trial judge surely would be cognizant of the numerous extreme bad faith findings against the prosecutor in two published Mississippi Supreme Court capital reversals in years immediately prior to Pitchford's trial, holding, inter alia, that the District Attorney had *fabricated* prior statements to impeach four witness, who were Black, and in closing argument espoused 14 discrete lies about the record. *See Flowers v. State*, 842 So.2d 531 (2003); *Flowers v. State*, 773 So.2d 309 (2000).

As explained fully herein, what properly remains for this Court is the step of returning the case to the District Court. But even if this Court were to determine that factfinding as to the prosecutor's intent must be considered, it is plain that any such factual development would be the province of the District Court. Whether a challenged strike "was motivated by discriminatory intent" is a fact finding "turning primarily on an assessment of credibility." *Purkett v. Elem*, 514 U.S. 765, 769 (1995); *Hernandez v. New York*, 500 U.S. 352, 367 (1991) (holding that whether prosecutor's strikes were discriminatory is question of fact).

Thus, with respect to any remaining question of pretext and District Attorney Evans's intentions, Pitchford would be entitled to a hearing. There appears to be no precedent for the Court of Appeals conducting such a hearing instead of a district court, which is the forum committed to hearing evidence and finding facts in the basic division of responsibilities in this judiciary. Fed. R. Civ. P. 52(a).

To that end, the Court may remand the case with the instruction to consider all evidence bearing upon the Equal Protection Clause violation due to the prosecution and state courts' breaches of *Batson*'s step three. *See CGL Underwriters v. Edison Chouest Offshore,* 8 F.3d 21 (5th Cir.

1993) (quoting *Inwood Laboratories v. Ives Laboratories*, 456 U.S. 844, 857 n.19 (1982) ("[I]f the District Court failed to consider relevant evidence, which would have been an error of law, the Court of Appeals, rather than make its own factual determination, should have remanded for further proceedings to allow the trial court to consider the evidence.")).

As to underlying questions of pretext in the prosecutor's proffers, the District Court may have already rendered its gateway decision on the possibility of a reconstructive *Batson* step-three hearing. But if the District Court determined that such an undertaking on District Attorney Evans's intent to discriminate in his use of the four challenged strikes was, at least as of December 12, 2023, (when the District Court entered the opinion here) not workable, the lower court did not state that. *See, e.g., Jordan v. Lefevre*, 206 F.3d 196, 202 (2d Cir. 2000) ("We ... direct the district court to, in its discretion, hold a hearing to reconstruct the prosecutor's state of mind at the time of jury selection, or if the passage of nine years since Jordan's trial and other circumstances should have made such a determination impossible or unsatisfactory, to order that the state grant Jordan a new trial."); *Tankleff v. Senkowski*, 135 F.3d 235,

250 (2d Cir. 1998) (same instruction); *cf. Snyder*, 552 U.S. at 486 (reversing the Louisiana Supreme Court, observing the absence of "any realistic possibility that this subtle question of causation [in the prosecution's exercise of peremptories] could be profitably explored further on remand at this late date, more than a decade after petitioner's trial.").

In the final analysis, it is apparent that the Supreme Court took no exception with the District Court's position on relief, given its full-throated embrace of the gravamen of the lower court's opinion. *Pitchford*, 146 S.Ct. at 1353.

In any event, if the District Court is ultimately instructed to explicitly consider this novel, residual question of pretext and the prosecutor's intent, the District Court would be responsible for conducting such factfinding. *Townsend v. Sain*, 372 U.S. 293, 312–13 (1963)[4] ("Where the facts are in dispute, the federal court in habeas

[4] *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 5–6 (1992), overruled *Townsend* in part (and itself was superseded by statute) "holding that where the petitioner has failed to develop a claim in state court proceedings, he must establish cause and prejudice in order to receive a federal evidentiary hearing." *Valdez v. Cockrell*, 274 F.3d 941, 944 n.4 (5th Cir. 2001). Here, however, there is no question that Pitchford in no way failed to develop the issue of the trial court's violation of step three, which he vindicated in the Supreme Court, as that claim was emphatically presented on direct review and rejected by the state supreme court on the grounds of waiver of rebuttal. *Cf. Williams*

corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words, a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts.").

## II. PITCHFORD'S EQUAL PROTECTION RIGHTS WERE VIOLATED WITHOUT REMEDY FROM THE STATE COURTS.

### A. This Violation Is Structural and Requires Reversal.

The Supreme Court of the United States, and, earlier, the District Court, each recognized that the state courts' fracture of Pitchford's equal protection rights plainly established a serious constitutional violation and, despite the state supreme court's adjudication to the contrary, satisfied the rigorous strictures of § 2254(d)(1) and (d)(2), thereby dictating the habeas corpus remedy the District Court conditionally ordered. The Mississippi Supreme Court's blind eye to the trial proceedings' breakdown at *Batson*'s step three yields a structural error. *Weaver v. Massachusetts*, 582 U.S. 286, 301 (2017) (noting the treatment

*v. Taylor*, 529 U.S. 362, 420 (2000) (explaining failure to develop pursuant to § 2254(e)(2)). Here, the State does not claim evidence on intentional discrimination was not presented in state court.

of *Batson* errors as structural, requiring "automatic relief"). Such an error necessitates "automatic reversal." *Rivera v. Illinois*, 556 U.S. 148, 161 (2009) (observing *Batson*, in both substance and procedure, is an "automatic reversal precedent"). This matter properly ends in the federal courts with the District Court's conditional writ.

Apart from these consequences from structural error, with the passage of time, retrospective determinations on the ultimate question of intentional discrimination becomes increasingly divorced from the jury selection event and thus unworkably artificial. This is a reality recognized even in cases under direct review (rather than after collateral or habeas corpus proceedings). *See, e.g.*, *Snyder*, 552 U.S. at 486.

The writ of habeas corpus is a vanishingly rare remedy that serves as a "guard against extreme malfunction in the state criminal justice systems." *Jackson v. Virginia*, 443 U.S. 307 (1979) (Stevens, J., concurring in judgment) (quoted in *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011)). Since the advent of AEDPA, of course, this form of relief arises only *after* the given factual and/or legal infirmities are established to exceed the "substantially higher threshold" § 2254(d) imposes upon the habeas corpus petitioner. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

The Supreme Court's opinion at bar leaves no question about the satisfaction of that onerous statute and this case is all the more extraordinary for exceeding this extreme standard on both factual *and* legal grounds, under § 2254(d)(2) and (d)(1), in explicitly embracing the Northern District of Mississippi's opinion. *Pitchford*, 146 S.Ct. at 1353.

Had the Supreme Court any concern over the District Court's remedy of a conditional writ ordering the retrial or release of Pitchford, it is difficult to see the majority saying nothing about it, especially when what *was* said of the District Court's reasoning and holding endorses it fully. The writ of habeas corpus, upon satisfaction of the onerous thresholds of § 2254(d), is the suitable remedy for this violation of the Equal Protection Clause—indeed, it is the *only* remedy. *Jones,* 600 F.3d at 541. The Supreme Court's opinion contemplates nothing less than the recognition of this grave rights violation. Yet it is now urged in this Court, in effect, that Pitchford must establish a double violation of the Fourteenth Amendment. After establishing the state high court's unreasonable fact findings and unreasonable application of the Supreme Court's law, Pitchford must now, according to the State, adduce the intentional discrimination of the prosecutor. The State lacks precedent

for this proposition. And what is clear is that a petitioner's purpose in satisfying § 2254(d) (whether (d)(1) or (d)(2), or, as in *Pitchford*, both), is to overcome a "constraint on the power of a federal habeas court to grant … the writ" in those cases—such as *Pitchford*—in which that court finds constitutional error. *Williams*, 529 U.S. at 412.

### B. The *Pitchford* Dissent Mischaracterizes What Remains on Remand.

It is at bottom unsurprising that the State seeks to divert the case from its ordinary return to the District Court and secure a decision from this Court subverting the plain ruling of the Supreme Court. The State's opening salvo upon return here manufactured a need for this Court to divine a remedy after the Supreme Court's reversal. The State leans heavily on the dissent in *Pitchford*, as opposed to analysis of the opinion of the Court, to insinuate there is uncertainty as to the remedy.

In making sense of the State's approach, it might first be noted that the word "remedy" does not appear anywhere in either the majority or dissenting opinions in *Pitchford*. The dissent minimizes the effect of the majority's unmistakable rejection of this Court's opinion by characterizing it as "a narrow judgment holding only that Pitchford did not waive a step three *Batson* argument without dictating what further

proceedings may be appropriate on remand consistent with § 2254." *Pitchford*, 146 S.Ct. at 1358 (Gorsuch, J., dissenting) (quoted in Suppl. Br. at 16).

This parting shot in dissent fails in three critical respects. First, the dissent misreads the holding. Yes, the Supreme Court made plain that the defense did not waive step three. But, the important point there is that the Mississippi Supreme Court's factual determination to the contrary *and* its legal conclusion that the defense so waived Pitchford's entitlement under *Batson* were both so extreme they each independently warranted relief under AEDPA. *Id.* at 1353 (opinion of the Court).

Second, and perhaps of greater moment, the Supreme Court's opinion explicitly recognizes that the state supreme court violated *Batson* by insulating the trial court's failure in step three not only from the judge shutting down the defense's right of rebuttal, but by the judge ignoring the duty to "decide[] whether the prosecutor's race-neutral reason for striking a juror is pretextual 'in light of all evidence with a bearing on it.'" *Id.* at 1349 (quoting *Miller-El*, 545 U.S. at 252); *see Salters v. New York City Transit Authority*, No. 25-383-cv, 2026 WL 2276417, at *1 (2d Cir. Aug. 7, 2026) (reversing district court on direct appeal in tort action

due to violation of *Batson*, "which requires the trial court to decide 'whether the [stated] race-neutral reason for striking a juror is pretextual in light of all evidence with a bearing on it.'" (quoting *Pitchford*, 146 S.Ct. at 1349) (citation modified)).[5]

Third, the dissent mistakenly underscores remaining implications for § 2254 on remand. There effectively is none. To the extent anything more from the District Court than the entry of judgment is needed now, § 2254 cannot apply in this case as a result of the majority's conclusion that the direct appeal decision of the state court failed to conduct the requisite final step in *Batson*. In the wake of the majority's trenchant application of § 2254(d)(1) and (2), there is simply on this record no state court adjudication that can be deferred to concerning application of *Batson*'s step three. In the wake of the Supreme Court's enunciation of the violation of *Pitchford*'s equal protection guarantees, the State now urges that that determination be carried out in this Court. But that contravenes habeas corpus procedure *after* the application of § 2254(d).

[5] On direct appeal from a trial in the Eastern District of New York, the Second Circuit remanded "with instructions to conduct a *Batson* reconstruction hearing, or, if it is no longer possible to do so effectively, to order a new trial." *Salters*, 2026 WL2276417, at *1. The court of appeals there entertained whether a reconstruction hearing can be effective in the original trial court just 18 months after the judgment.

In the wake of Pitchford's federal proceedings to date, the sustained failure of the state courts to make a step-three determination on the prosecutor's intent leaves no doubt as to whether that question, now at the heart of the State's advocacy, was not "adjudicated on the merits in [s]tate court." *Johnson*, 568 U.S. at 302 (construing § 2254(d), quoting Black's Law Dictionary 1199 (9th ed. 2009)). Thus, notwithstanding the *Pitchford* dissent's allusion to § 2254 (*supra*), any further consideration of this step-three issue must be done *de novo*, and outside the limitations of AEDPA deference. *See, e.g.*, *Porter v. McCollum*, 588 U.S. 30, 39 (2009) (per curiam) ("Because the state court did not decide whether Porter's counsel was deficient, we review this element of Porter's *Strickland* claim *de novo*."); *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) ("Because the state courts found the representation adequate [under the first prong of the *Strickland* standard], they never reached the issue of prejudice, … and so we examine this element of the *Strickland* claim *de novo*.").

Finally, if the dissent had a colorable basis for calling into question the remedy issue that the State presented in seeking this supplemental briefing, Justice Gorsuch would be expected to have stated it. The dissenting opinion offers no such suggestion.

The *Pitchford* majority has done nothing to disrupt the District Court's original determination to grant a conditional writ. The high court has only reinforced the correctness of the lower court's course of action in this matter. But even if further factfinding as to the discriminatory intent of District Attorney Evans were needed at this juncture, it would be under *de novo* review under these extraordinary circumstances. *Johnson*, 568 U.S. at 302.

## III. THE DISTRICT COURT'S CONDITIONAL WRIT IS WARRANTED.

The Supreme Court's entire opinion endorses the District Court's resolution of § 2254(d)(1), (2), which justified issuance of the habeas corpus writ. It beggars belief that Justice Kavanaugh's opinion, after explicitly endorsing the Northern District of Mississippi's ruling on § 2254(d)(1) *and* (d)(2), would have said not a single word of disapproval of the District Court's opinion—including the intertwined remedy—if the majority disagreed with the lower court's opinion in any material respect. Indeed, the standard conclusion of any majority opinion, which Justice Kavanaugh repeated here, of "further proceedings consistent with this opinion," *Pitchford*, 146 S.Ct. at 1353, is issued by the Court in nearly

every majority opinion,[6] and it is far more the exception than any manner of rule that the Court must specify granular instructions for the lower courts.

The notion that, because the majority did not say more, it somehow *sub silentio* disavowed the District Court's opinion in any material respect defies understanding of how the high court renders decisions. The heart of this matter lies in the granting of the habeas corpus writ conditionally upon Pitchford's retrial or release. It would be bizarre for the Supreme Court to disavow silently only that feature of the District Court's opinion while emphatically espousing its analysis and opinion and rejecting the reasoning of this Court, which had overturned it.

The State dedicates its Supplemental Brief not to the novel question of remedy that it asserted in its Motion precipitating this briefing. The State has chosen to ignore that gateway issue, instead devoting its argument to the proposition District Attorney Evans did not discriminate with respect to any of the four against whom he exercised

[6] A query of Westlaw covering the opinions issued during the October 2025 Term identifies 41 cases using exactly that phrasing, from a pool of 66 majority opinions. Jake S. Truscott & Adam Feldman, *The 2025-26 Term by the Numbers*, SCOTUSblog (Jul. 1, 2026,) https://www.scotusblog.com/2026/07/the-2025-26-term-by-the-numbers/. The balance of the majority opinions tend to vary from that exact six-word phrase slightly and with no material difference.

peremptory strikes. Suppl. Br. at 16–26. But the State's theory of relief is that while the state courts negated the *Batson* framework and the Supreme Court recognized this serious violation of the Equal Protection Clause, Pitchford must twice establish this *Batson* violation in order to obtain any relief.

The State makes no attempt to support its position with authorities in this briefing. Further, the State has chosen not to argue that the Court of Appeals may determine a remedy other than that which the District Court has ordered (*viz.* conditional writ of retrial or release), and thus it is foreclosed from arguing the remedy point belatedly, despite it being the ostensible impetus for this Supplemental Briefing. The State has waived the remedy argument for its reply. *Hernandez v. United States*, 888 F.3d 219, 224 n.1 (5th Cir. 2018) (citing *Lockett v. EPA*, 319 F.3d 678, 684 n.16 (5th Cir. 2003) ("To the extent that appellants attempt to raise the issue ... in their reply brief, we view the issue waived.")).

## IV. ALTERNATIVELY, THE RECORD OVERWHELMINGLY SUPPORTS A FACT-FINDING OF INTENTIONAL RACIAL DISCRIMINATION.

As argued above, the following addresses an issue not properly before this Court upon this remand. This section mentions facets of the

prosecutor's intentional discrimination that have been extensively presented in various pleadings throughout the litigation. Given the word limits imposed in this supplemental briefing, Pitchford expressly incorporates the records of the Supreme Court and lower federal courts with respect to the grounds establishing the fact of the prosecution's intentional discrimination in the four challenged strikes. In the event the Court identifies a process for the novel undertaking the State now advocates instead of remanding for an anomalous factfinding exercise in the District Court, Pitchford anticipates moving the Court for guidance as to the procedures that would govern the sui generis inquiry.

Mississippi has formulated a list of five "indicia of pretext," which join numerous other considerations under the *Batson* jurisprudence, for use in analyzing race-neutral proffers:

> (1) disparate treatment, that is, the presence of unchallenged jurors of the opposite race who share the characteristic given as the basis for the challenge; (2) the failure to voir dire as to the characteristic cited; ... (3) the characteristic cited is unrelated to the facts of the case; (4) lack of record support for the stated reason; and (5) group-based traits.

*Pruitt v. State*, 986 So.2d 940, 944 (Miss. 2008) (quotation omitted).

The prosecution conducted disparate treatment and questioning of white venirepersons compared to the four stricken Black ones here. The

trial record shows District Attorney Evans did not peremptorily strike whites with the same characteristics while his proffered "race neutral" explanations for Black strikes were abundantly presented on direct appeal and in prior federal pleadings. *E.g.*, Dkt. 42 at 43–60. The four struck Black venirepersons said almost nothing in voir dire, reflecting a strategy of disparate questioning betraying the reliance on the color of their skin for exercising strikes. *E.g., id.* at 17 (no voir dire on any of the four to support peremptory strikes aside from confirming the name of Ms. Tidwell's cousin). Many of the race neutral proffers were irrelevant to the case. The prosecution cited numerous speeding violations, or tardiness in arriving to court. *E.g., id.* at 59, 53. The lack of record support for the proffers broadly infects these strikes. The prosecutor repeatedly asserted facts not in evidence in support of his "race-neutral" proffer. Nothing in the record shows Mr. Ward's driving record; no evidence supports the existence of Ms. Lee's mental problems. *E.g., id.* at 55, 59. Finally, the prosecutor relied on group-based traits, especially for the strike of Mr. Ward, whose "race neutral proffer" was simply that he was "too closely

related to" Pitchford, though they had no relation other than shared group traits. *E.g., id.* at 57.[7]

Additionally, federal law recognizes evidence of pretext beyond Mississippi's five indicia. *Flowers*, 588 U.S. at 301–02 (non-exhaustive list of evidence relevant to *Batson*'s step three). Presently, District Attorney Evans's ignominious track record of intentional discrimination is well developed and recognized. *Id.* at 311–15 (detailing intentional racial discrimination across six trials of Curtis Flowers); *id.* at 287 (reciting Mississippi Supreme Court's intentional racial discrimination and related prosecutorial misconduct findings in reversing first three of six trials); *supra* n.3.

## CONCLUSION

The Supreme Court reversed the entirety of this Court's decision and fully endorsed the District Court's determination that the state court adjudication of Pitchford's *Batson* challenge was unreasonable under

[7] For instance, in the prosecutor's 2022 federal court deposition he repeatedly insisted, that he struck Ward due to his voir dire statements, yet Ward said nothing at all on the record. He explained that Ward lived in the same neighborhood as Pitchford, assuming that because they are both Black, they both live in the Black part of town. ROA.16579. It is unclear what bearing evidence in the federal court record has for the artificial exercise of deciding, after the Supreme Court's conclusion that the state courts violated *Batson*, whether the prosecutor intended to discriminate.

§ 2254(d)(1) and (d)(2). Accordingly, there is nothing left to litigate in this Court on remand. Alternatively, if a *Batson* step three merits determination is required in addition to the aforementioned § 2254(d) findings, the District Court is the proper forum to hear relevant evidence and make necessary findings of fact.

Respectfully submitted by,

*/s Joseph J. Perkovich*
Joseph J. Perkovich
Phillips Black, Inc.
PO Box 3547
New York, NY 10008
(212) 400-1660

*/s Joseph C. Welling*
Joseph C. Welling
Phillips Black, Inc.
100 N. Tucker Blvd., Ste. 750
St. Louis, MO 63101
(314) 629-2492
j.welling@phillipsblack.org

*/s J. Scott Gilbert*
J. Scott Gilbert
Watkins & Eager PLLC
The Emporium Building
400 East Capitol Street
Jackson, MS 39201
(601) 965-1922

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). This brief contains 6,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief also complies with the typeface requirements of Fed. R. App. P.32(a)(5), and type style requirements of Fed. R. App. P. 32(a)(6). It has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14 point font, with footnotes in Century Schoolbook 12 point font.

*/s Joseph J. Perkovich*
Joseph J. Perkovich